# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC., | : : : |
| Plaintiff, | : Civil Action No. 1:12-cv-01156-JEB |
| v. | : : |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | : : : : |
| Defendants. | : : |

## **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Blake A. Biles
(D.C. Bar No. 441679)
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C.  20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
E-mail: blake.biles@aporter.com

Kent A. Yalowitz
*Pro hac vice*
ARNOLD & PORTER LLP
399 Park Avenue
New York, N.Y.  10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
E-mail: kent.yalowitz@aporter.com

*Counsel for Plaintiff American Chemistry Council, Inc.*

December 11, 2012

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. iii
**PRELIMINARY STATEMENT** ............................................................................................ 1
**ARGUMENT** ........................................................................................................................... 2
**I.   PLAINTIFFS HAVE PLED A CLAIM UNDER THE FOIA.** ....................................... 2
   **A.   Defendants' Assertion That They Have Provided The Requested Records Raises An Issue of Fact.** ......................................................................................................... 2
   **B.   Defendants Misdescribe ACC's FOIA Request.** ...................................................... 4
      **1.   Defendants' Description Of The Text Of The FOIA Request Is Misleading.** ........ 4
      **2.   Defendants' Interpretation Of The Request Is Unreasonable.** ............................... 6
      **3.   ACC Has Not Waived Its Rights to Challenge Defendants' Interpretation of The FOIA Request.** ................................................................................................. 8
   **C.   The HHS Regulation Applies To ACC's Request Because The Federal Government Used The Findings In Developing An Agency Action That Has The Force And Effect Of Law.** ................................................................................................. 9
**II.   THE APA AND MANDAMUS CLAIMS ARE OFFERED AS ALTERNATIVE FORMS OF RELIEF.** ........................................................................................................ 12
**CONCLUSION** .................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508 (D.D.C. 1996) .......................................... 6
*ExxonMobil Corp. v. Dep't of Commerce*, 828 F. Supp. 2d 97 (D.D.C. 2011) .............................. 6
*Fertilizer Inst. v. Dep't of Health & Human Servs.*, 355 F. Supp. 2d 123 (D.D.C. 2004) 10, 11, 12
*Fertilizer Inst. v. Envtl. Prot. Agency*, 935 F.2d 1303 (D.C. Cir. 1991) ...................................... 11
*Hemenway v. Hughes*, 601 F. Supp. 1002 (D.D.C. 1985) ............................................................ 8
*Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6 (D.D.C. 2012) ................ 8
*Nation Magazine, Wash. Bureau v. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ........................ 8
*Occidental Petroleum Corp. v. Secs. Exch. Comm'n*, 662 F. Supp. 496 (D.D.C. 1987) ................ 9
*Pohl v. Envtl. Prot. Agency*, No. 09-1480, 2010 WL 4388071 (W.D. Pa. Oct. 29, 2010) ........... 15
*Remmie v. Mabus*, 846 F. Supp. 2d 91 (D.D.C. 2012) ..................................................... 3, 14, 15
*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000 ................................................ 4
*Steinhorst Assocs. v. Preston*, 572 F. Supp. 2d 112 (D.D.C. 2008) ............................................ 14
*Summers v. Dep't of Justice*, 477 F. Supp. 2d 56 (D.D.C. 2007) .................................................. 8
*Tax Analysts v. Dep't of Justice*, 913 F. Supp. 599 (D.D.C. 1996) ............................................... 6
*\*Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301 (D.C. Cir. 2001) ....................... 2, 12, 13
*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ................................................................ 8
*United States v. Honeywell Int'l Inc.*, 798 F. Supp. 2d 12 (D.D.C. 2011) ..................................... 4
*United States v. Toyobo Co.*, 811 F. Supp. 2d 37 (D.D.C. 2011) .................................................. 4

## STATUTES

5 U.S.C. § 552(f)(2) ....................................................................................................................... 5

## OTHER AUTHORITIES

64 Fed. Reg. 54,926 (Oct. 8, 1999) .............................................................................................. 10
74 Fed. Reg. 44,845 (Aug. 31, 2009) ........................................................................................... 12
74 Fed. Reg. 67,883 (Dec. 21, 2009) ........................................................................................... 12

## REGULATIONS

29 C.F.R. § 1910.1200(d)(2) ........................................................................................................ 12
29 C.F.R. § 1910.1200(d)(4)(i) .................................................................................................... 12
29 C.F.R. § 1910.1200(g)(1) ........................................................................................................ 12
29 C.F.R. § 1910.1200(g)(2) ........................................................................................................ 12
29 C.F.R. § 1910.1200(g)(5) ........................................................................................................ 12
45 C.F.R. § 5.2 ............................................................................................................................... 8
45 C.F.R. § 5.33(a) ........................................................................................................................ 9
45 C.F.R. § 5.5 ............................................................................................................................... 6
45 C.F.R. § 74.36(d)(2)(i) .............................................................................................................. 6

Plaintiff American Chemistry Council, Inc. ("ACC") submits this Memorandum in opposition to the Motion of Defendants United States Department of Health and Human Services ("HHS"), the National Institutes of Health ("NIH"), the National Institute of Environmental Health Sciences ("NIEHS") and the National Cancer Institute ("NCI") to dismiss the complaint filed in the above-captioned action.

## PRELIMINARY STATEMENT

This Freedom of Information Act ("FOIA") case seeks public access to records, including research data, from a study which the NIH cited as the basis for its inclusion of formaldehyde as a known human carcinogen in the Twelfth Report on Carcinogens (the "12th RoC"). Specifically, ACC seeks information related to a federally-funded 2010 study of formaldehyde, commonly referred to as the "Zhang Study." The Complaint asserts that NIH has not obtained and provided to ACC responsive data that are in the possession or control of NIH and of the Grantee who received monies from NIH to fund the Zhang Study. (*See* Compl. ¶¶ 28, 33, 41.)

Defendants take the position that they: (1) have reviewed the records in the possession or control of NIH in a manner compliant with the FOIA (*see* Mem. in Supp. of Defs.' Mot. to Dismiss at 6-7, 11 ("Mot. to Dismiss") (ECF Doc. No. 19-1)); (2) have produced all responsive NIH records to ACC (*see id.* at 7-8); and (3) are not required to request any research data from the Grantee (*see id.* at 11-13, 19-20). Defendants make three arguments in support of this position:

*First*, Defendants claim that NIH has produced to ACC all responsive records in the possession or control of NIH. (*See id.* at 7-8, 11-12, 19-20.) That assertion is contrary to the facts alleged in the Complaint.

*Second*, although the parties agree that the Shelby Amendment applies to "data" but not to other records, Defendants argue that ACC only requested "data" in one specific part of its

FOIA request, and that NIH possesses the entire set of those specific data (which the Grantee also possesses), thereby negating NIH's obligation to request those same data from the Grantee. (*See id.* at 11-12, 20.) That position misreads the unambiguous language of ACC's FOIA request, and is contrary to law.

*Third*, Defendants argue that the relevant HHS regulation does not require them to request the data from the Grantee because their use of the data in listing formaldehyde as a "known carcinogen" in the RoC did not have the "force and effect of law." (*See id.* at 13-19.) That position simply ignores the legal impact of the listing decision, as recognized by the D.C. Circuit in a case that Defendants do not cite. *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301 (D.C. Cir. 2001).

## ARGUMENT

I. **PLAINTIFFS HAVE PLED A CLAIM UNDER THE FOIA.**

   A. **Defendants' Assertion That They Have Provided The Requested Records Raises An Issue of Fact.**

Defendants' motion raises a fact issue. ACC's FOIA request sought three categories of documents:

1. "All Records related to the protocol and methodology for conducting the Study."

2. "All Records related to the information and data obtained regarding the Study subjects."

3. "All Records related to any analyses, results (including but not limited to photomicrographs), findings and conclusions resulting from use of the protocol and methodology Records requested in (1) above, with respect to the information and data in the Records requested in (2) above, that have been conducted and that are not included in the published summary of the Study."

(Compl. Ex. 1 at 1-2.) As explained below, the FOIA request defined "Records" as any information that is subject to the FOIA.

The Complaint alleges that the Grantee has these records: "Upon information and belief, the Grantee [Dr. Zhang] is in possession or control of Requested Records." (*Id.* ¶ 33.) And the Complaint alleges that the Defendants have failed to obtain or produce the records: "Defendants have violated the FOIA . . . by not obtaining Requested Records from the Grantee, and by not providing all Requested Records to Plaintiff." (*Id.* ¶ 41.)

Defendants dispute these factual allegations in their memorandum:

- "HHS possesses the data underlying [the Zhang Study] as well as other records related to the study, and has provided the study data to the public through the published research study and through FOIA." (Mot. to Dismiss at 1.)

- The relevant federal regulation requiring HHS to obtain the requested data from the grantee "does not apply to [ACC's] request for data because the agency has the entire set of data and is not required to ask [the Grantee] for the same data it already possesses." (*Id.*)

- "The agency's obligation . . . to request the data from [the Grantee] was not triggered here because [] the agency already possessed the data." (*Id.* at 10.)

- "[T]he requested data were already publicly available." (*Id.* at 12.)

- "[T]he agency already has the research data." (*Id.* at 13.)

These assertions are inconsistent with the Complaint and are not a proper basis for a motion to dismiss. In considering a motion to dismiss, the court must "'treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Remmie v. Mabus*, 846 F. Supp. 2d 91, 93 (D.D.C. 2012) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). *See also United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 52 (D.D.C. 2011) (question of fact not appropriate for resolution at motion to dismiss phase); *United States v. Honeywell Int'l Inc.*, 798 F. Supp. 2d 12, 26 (D.D.C. 2011) (same).

### B.     Defendants Misdescribe ACC's FOIA Request.

According to Defendants, "Plaintiff's Request sought two different types of records: First, the Item 2(f) of the Request asked for 'research data' from the Zhang Study. Second, the remainder of the Request sought other 'records related to' the Zhang Study." (Mot. to Dismiss at 10 (citing and purporting to quote Compl. Ex. 1 at 2).) Defendants then contend that Item 2(f) is the *only* relevant portion of ACC's request pertaining to data that are in the Grantee's possession or control. (*See id.* at 11.) Defendants are wrong. They ignore the actual text of ACC's request, as well as applicable case law holding that FOIA requests must be construed liberally.

#### 1.     Defendants' Description Of The Text Of The FOIA Request Is Misleading.

The actual request did not distinguish "two different types of records," as Defendants contend. Rather, as stated above, ACC's request sought, among other things: (1) "[a]ll Records related to the protocol and methodology for conducting the [Zhang] Study"; (2) "[a]ll Records related to the information and data obtained regarding the Study subjects"; and (3) "[a]ll Records related to any analyses, results . . . findings and conclusions . . . that have been conducted and that are not included in the published summary of the Study." (Compl. Ex. 1 at 1-2.) Further, specific types of Records were listed under each of these three items. ACC's request applied all three items to "Records" in the possession or control of NIH, and to research data in the possession or control of the Grantee. For example, Item 2 reads, in full:

> All Records related to the information and data obtained regarding the Study subjects. These *include* all Records (whether in English or Chinese) concerning:
>
> a. Original questionnaires administered to Study subjects by trained interviewers requesting such information as occupational history, environmental exposures, medical history and current medications, and past and current tobacco and alcohol use.

- 5 -

    b. Spreadsheets or other Records that were developed in order to summarize and/or analyze the information collected as part of the questionnaires administered to each Study subject.

    c. Records identifying the specific factory at which each Study subject was employed.

    d. Records identifying the specific Chinese or Western medicines used by each Study subject.

    e. Records containing the laboratory analytical results from the exposure monitoring conducted with UME diffusion samplers worn by each Study subject.

    f. Data and methods used for estimating 8-hr time weighted average levels for control subjects and exposed subjects.

    g. Records that provide the Study subjects' individual clinical chemistry results, to include laboratory standardization, laboratory reference values and interlaboratory comparison statistics.

(*Id.* at 2 (emphasis added).)

In this regard, the FOIA request contained an express definition of "Records," which Defendants do not acknowledge: "As used in this request, the term 'Records' has the meaning in 5 U.S.C. § 552(f)(2)." (*Id.*)  Subsection 552(f)(2), in turn, provides:

> (2) "record" and any other term used in this section in reference to information includes—
>
> (A) any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and
>
> (B) any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

Thus, the actual text of the request expressly defined "Records" as "*any* information" that would be an agency record "subject to" the FOIA "when maintained by an agency in *any*

*format*."[1]  This definition embraces a wide array of materials and media, including "data."  *See, e.g.*, *ExxonMobil Corp. v. Dep't of Commerce*, 828 F. Supp. 2d 97, 106 (D.D.C. 2011) ("[D]ata produced by a private researcher may be considered agency records if the researcher was acting on behalf of the agency."); *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.D.C. 1996) (data contained on tapes were agency records); *Tax Analysts v. Dep't of Justice*, 913 F. Supp. 599, 602 (D.D.C. 1996) (data are agency records if controlled by the agency).

The agency itself defines "research data" broadly to include "recorded factual material commonly accepted in the scientific community as necessary to validate research findings."  45 C.F.R. § 74.36(d)(2)(i).  The specific types of records under the three points in its FOIA request plainly fall within the ambit of "Records" under the FOIA and "research data" as defined by HHS.

### 2.     Defendants' Interpretation Of The Request Is Unreasonable.

Defendants repeatedly confirm that "data" are included within the scope of the term "records."  (*See, e.g.*, Mot. to Dismiss at 10, 12, 13, 20.)  However, Defendants also argue that Item 2(f) is the only part of ACC's request that pertains to data which are in the Grantee's possession or control, apparently because the word "data" appears in Item 2(f) but not in the other specific types of "records" listed by ACC in the request.  (*See id.* at 10-11, 19-20.)  Therefore, when considering whether they are required to request the data from the Grantee, Defendants have concluded that ACC's use of the term "Records" does not encompass "data," and, as corollary, that Defendants only may be required to contact the Grantee when ACC (and,

---

[1] Although the statute is controlling and unambiguous, it is worth mentioning that HHS's own definition of the term "record" includes "*any* handwritten, typed, or printed documents . . . and *documentary material in other forms*."  45 C.F.R. § 5.5 (emphasis added).

presumably, anyone else who submits a FOIA request seeking data held by a grantee) specifically refers to "data" in its request.

ACC's FOIA request necessarily asked for "Records" not just because that term is found in the FOIA and is accepted by agencies (including HHS) throughout the federal government in their review of FOIA requests. Rather, inasmuch as ACC's request applied both to records in the possession or control of NIH, and to research data in the Grantee's possession or control, ACC's use of the term "Records" throughout its request comported with the scope of Defendants' dual obligation to review their own records and to request relevant research data from the Grantee. In fact, were Defendants' interpretation of ACC's request to stand, it would compel anyone who seeks both agency records (involving any federal agency) and grantee research data to spell out, in its FOIA request, that it seeks "records" from the agency and "research data" from the grantee—and to repeat this distinction for each piece of information covered by the FOIA request. Such an outcome would fully elevate form over substance, and would run completely counter to both the language and intention of the FOIA and the Shelby Amendment.

Thus, Defendants' construction of ACC's request in this manner is impermissibly cramped. Agencies may not "read [a] request so strictly that the requester is denied information the agency well knows exists in its files." *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6, 12 (D.D.C. 2012) (quoting *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985)). *See also Nation Magazine, Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) ("Although a requester must reasonably describe the records sought . . . agencies have a "duty to construe a FOIA request liberally." (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990)). This is because FOIA "embodies a 'fundamental commitment to full agency disclosure of government documents' and 'public access, not secrecy,

is the main purpose of FOIA.'" *Summers v. Dep't of Justice*, 477 F. Supp. 2d 56, 62 (D.D.C. 2007) (citation and internal quotations omitted).  Even the agency's own regulation expressly "calls for the fullest responsible disclosure consistent with those requirements of administrative necessity and confidentiality which are recognized in the [FOIA]."  45 C.F.R. § 5.2.

### 3. ACC Has Not Waived Its Rights to Challenge Defendants' Interpretation of The FOIA Request.

Defendants incorrectly contend that "there can be no dispute about whether the remaining items in Plaintiff's Request sought 'data' as opposed to other types of records, because the agency interpreted the Request to only seek data in Item 2(f) and Plaintiff did not challenge that interpretation."  (Mot. to Dismiss at 20.)  That is a misleading description of the record.  NIH's December 1, 2011 response to ACC's request states:

> To the extent that your request under item 2f seeks data produced under a [NIH] grant pursuant to [Circular A-110], please understand that the provisions of Circular A-110 apply to data . . . [f]irst produced under a new or competing continuing grant awarded after April 17, 2000 . . . and [c]ited publicly and officially by the Federal Government in support of an agency action having the force and effect of law.
>
> Because the data you have requested does not meet one or both of the above referenced criteria, NIH will not forward your request under item 2f to the grantee . . . .

(Compl. Ex. 3 at 3.)  There was simply no reasonable indication in this letter that Defendants had adopted any particular "interpretation" of the FOIA request, much less one that redefined the term "Records" to exclude "research data."  Even if a reasonable reader could deduce from the response that the agency had taken such an extreme position—and the undersigned could not—Defendants did not satisfy the requirement that they provide the reasons for their denial.  *See* 45

C.F.R. § 5.33(a); *see also Occidental Petroleum Corp. v. Secs. Exch. Comm'n*, 662 F. Supp. 496, 498-99 (D.D.C. 1987) (requiring particularized reasons for denial).[2]

### C. The HHS Regulation Applies To ACC's Request Because The Federal Government Used The Findings In Developing An Agency Action That Has The Force And Effect Of Law.

Finally, Defendants argue that the Complaint does not adequately plead that the inclusion of formaldehyde in the 12th RoC had the "force and effect of law." (*See* Mot. to Dismiss at 16.) That is not correct. The Complaint alleges that classifying formaldehyde as "known to be a human carcinogen" has the force and effect of law because inclusion in the 12th RoC results in a specific, OSHA-imposed requirement for manufacturers of formaldehyde to develop material safety data sheets containing information regarding the product's classification as a carcinogen. (*See* Compl. ¶ 19.)

Defendants rely on *Fertilizer Institute v. Department of Health & Human Services*, 355 F. Supp. 2d 123 (D.D.C. 2004), for the proposition that the "RoC is not an agency action that carries the force and effect of law." (*See* Mot. to Dismiss at 15-16.) Defendants argue that because the court in *Fertilizer Institute* found that a particular RoC listing was "interpretive" rather than "legislative," the listing in this case does not have the force and effect of law. (*See id.*) The *Fertilizer Institute* case is inapposite. The *Fertilizer Institute* court did not address the issue of whether all listings in the RoC have the "force and effect of law"; rather, it considered whether the decision to list a particular substance—sulfuric acid mist—triggered notice-and-

---

[2] Equally unavailing is Defendants' disingenuous assertion that ACC did not satisfy the exhaustion requirements by not challenging NIEHS's and NCI's invocation of certain FOIA Exemptions in responding to ACC's January 4, 2012 appeal. Defendants claim that HHS "conducted a search of its records at both NIEH[S] and NCI, and produced, subject to FOIA's Exemptions, 140 pages of responsive records." (*See* Mot. to Dismiss at 19.) As Defendants are well aware, they did not invoke any exemption until they responded to ACC's *appeal* of the December 1, 2011 response, by letter dated August 13, 2012—more than a month after ACC commenced this case.

comment procedures under the "interpretive/legislative" distinction. *See* 355 F. Supp. 2d at 126. The court concluded that because the source of the NTP's authority to list sulfuric acid mist in the RoC was not substantive, the decision to list was not subject to formal rulemaking procedures. *See id.* at 126-27.

As an initial matter, the issue in *Fertilizer Institute* was whether a RoC listing was interpretive or substantive for notice-and-comment purposes. The court explained that "the proper focus" in such a case "is the *source* of the agency's action, not the *implications* of that action." *Id.* at 127 n.4 (quoting *Fertilizer Inst. v. Envtl. Prot. Agency*, 935 F.2d 1303, 1308 (D.C. Cir. 1991)) (emphasis added). Here, in contrast, the focus is on the *effect* of the agency action. In fact, in announcing its final promulgation of revised Circular A-110 implementing the Shelby Amendment, OMB noted that an earlier version of the Circular applied to "a regulation (for which notice and comment is required under 5 U.S.C. § 553)." 64 Fed. Reg. 54,926, 54,928 (Oct. 8, 1999). OMB explained that it had changed this language in response to concerns that it "significantly narrowed the scope of the regulation," particularly when compared against the language used by the Shelby Amendment's sponsors, *i.e.*, "used by the Federal Government in developing policy or rules." *Id.* OMB further noted that a comment letter from the legislation's sponsors "stated that the revision should not be limited to regulations, but should apply generally to 'federal actions that can dramatically impact the public.'" *Id.* OMB concluded that "[a]gency actions that have 'the force and effect of law' certainly represent 'federal actions that can dramatically impact the public,'" because such actions "impose[] costs, mandates, restrictions, obligations and responsibilities on the regulated community." *Id.* OMB explained that the "force and effect of law" language was meant to exclude "agency guidance documents and other issuances that do not have the force and effect of law." *Id.* at 54,929.

Moreover, in considering this issue, the *Fertilizer Institute* court acknowledged that the D.C. Circuit in *Tozzi v. Department of Health & Human Services* had recognized the "binding effect" of the RoC listing for purposes judicial reviewability. 355 F. Supp. 2d at 127 (citing *Tozzi*, 271 F.3d at 310). In *Tozzi*, the court addressed the precise factual scenario here: the "upgrading" of a substance (dioxin) in the RoC from "reasonably anticipated" to be a human carcinogen, to "known to be" a human carcinogen. The *Tozzi* court rejected as "inaccurate" the government's argument that the upgraded listing lacked a "binding" or "legal effect." 271 F.3d at 310. Rather, the court held that the listing created a binding legal effect because it "triggers obligations under OSHA, Department of Labor and state regulations." *Id.* The *Tozzi* court went on to hold that "[a]dditional evidence of a listing's 'legal effect' comes from the fact that in order to remove a substance from either category, the Secretary must undertake the same elaborate procedure—including notice and comment—required from an initial listing." *Id.* The *Tozzi* court similarly rejected the agency's claim that the fact that the RoC states that it is for "informational purposes only" necessarily meant that the listing had no "legal effect." *Id.* Finally, the *Tozzi* court found that although the final RoC was not published in the Federal Register, the HHS Secretary's publication of a notice proposing the upgrade, and a summary of the decision, were sufficient evidence of its binding legal effect. *See id.*

Here, as in *Tozzi*, once a substance is upgraded from "reasonably anticipated to be a human carcinogen" to "known to be a human carcinogen," a manufacturer, importer or employer is *required* by OSHA's hazard communication standard to reevaluate it and, as appropriate, make corresponding changes to material safety data sheets that are distributed to customers. *See*

29 C.F.R. § 1910.1200(d)(4)(i), (g)(2) & (5).[3]  OSHA's regulation provides that regulated persons "shall treat" the chemicals in the manner specified in the "latest edition" of the RoC. *Id.* § 1910.1200(d)(4)(i).  Thus, listing in the RoC carries the force and effect of law. *See also Steinhorst Assocs. v. Preston*, 572 F. Supp. 2d 112, 123 (D.D.C. 2008) (agency rule was considered "binding" and therefore had the "force and effect of law because it conclusively establishe[d]" the relevant rule and left no discretion as to that rule).  Finally, as in *Tozzi*, the binding effect of the RoC listing decision is powerfully evidenced by HHS's publication in the Federal Register—including a request for public comment—of the NTP's recommendation to list formaldehyde as a known human carcinogen, *see* 74 Fed. Reg. 67,883 (Dec. 21, 2009), and the draft background documents supporting the listing, *see* 74 Fed. Reg. 44,845 (Aug. 31, 2009).[4]

## II. THE APA AND MANDAMUS CLAIMS ARE OFFERED AS ALTERNATIVE FORMS OF RELIEF.

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the court has subject matter jurisdiction over its claims. *See Remmie*, 846 F. Supp. 2d at 93-94 (citations omitted).  "For this reason, the . . . factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion." *Id.* (citation and internal quotation omitted).

---

[3] The regulation requires chemical manufacturers, importers or employers to "obtain or develop [a] safety data sheet for each hazardous chemical they produce or import," which data sheet must "ensure that the information provided accurately reflects the scientific evidence used in making the hazard classification," including with respect to toxicological information such as carcinogenicity. 29 C.F.R. § 1910.1200(g)(1), (2) & (5).  In developing the sheets, parties must "treat the following sources as establishing that a chemical is a *carcinogen or potential carcinogen* for hazard communication purposes . . . National Toxicology Program (NTP), Annual Report on Carcinogens (latest edition)."  *Id.* § 1910.1200(d)(4)(i) (emphasis added).  Further, parties "classifying chemicals shall identify and consider the full range of available scientific literature and other evidence concerning the potential hazards."  *Id.* § 1910.1200(d)(2).

[4] Likewise, ACC disagrees with Defendants that a document in draft form, such as the Draft EPA Toxicological Review of Formaldehyde, cannot be used to make policy.

Defendants argue that the Court lacks subject matter jurisdiction over ACC's APA claim because the FOIA provides an adequate alternative remedy.  (*See* Mot. to Dismiss at 20-27.)  As ACC has maintained, the APA claim is offered as an alternative to the FOIA claim, because the District Court in *Pohl v. Environmental Protection Agency* stated that the "FOIA itself does not contain [the requirement to request data from a grantee] and cannot provide an adequate remedy for the agency's failure to do so."  No. 09-1480, 2010 WL 4388071, at *5 (W.D. Pa. Oct. 29, 2010).  The parties here agree that FOIA—not the APA—is the applicable statute.

Likewise, the mandamus claim is offered as an alternative ground for relief in the event the Court concludes that neither the FOIA nor the APA provide relief.  To the extent that Defendants' motion concedes that the FOIA provides the appropriate relief, this action may proceed on that basis.

## CONCLUSION

Defendants' commit three fatal errors in their motion:  they seek dismissal of the case based on a disagreement with the facts of the Complaint; they make a distinction between "records" and "data" that does not exist in the request or under the FOIA; and they misinterpret the case law, ignoring a leading D.C. Circuit case.  Given these deficiencies, Defendants' Motion should be denied, and the Court should order Defendants to respond to ACC's Motion for Summary Judgment.

Dated:         December 11, 2012              Respectfully submitted,

/s/ Blake A. Biles
Blake A. Biles
(D.C. Bar No. 441679)
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C.  20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
E-mail: blake.biles@aporter.com

- 14 -

                Kent A. Yalowitz
                *Pro hac vice*
                ARNOLD & PORTER LLP
                399 Park Avenue
                New York, N.Y.  10022
                Telephone: (212) 715-1000
                Facsimile: (212) 715-1399
                E-mail: kent.yalowitz@aporter.com

*Counsel for Plaintiff American Chemistry Council, Inc.*