# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN CHEMISTRY COUNCIL, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-1156 (JEB) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# REPLY IN SUPPORT OF
# <u>DEFENDANTS' MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.      Plaintiff's FOIA Claim Should Be Dismissed ........................................................ 2

        A.      Different Obligations Exist for Requests for Data Versus
                Other Records ............................................................................................... 2

        B.      Obligation Under FOIA ................................................................................ 2

        C.      Obligation Under Circular A-110, 45 C.F.R. § 74.36(d)(1) ...................... 4

                1.      As Interpreted by the Agency, Only Item 2(f) of the Request
                        Sought Data Subject to Circular A-110 .......................................... 4

                2.      Circular A-110, § 74.36(d)(1) Does Not Apply .............................. 7

                        a.      Circular A-110 Does Not Apply to Publicly
                                Available Data ................................................................... 7

                        b.      Circular A-110 Does Not Apply by Its Terms .................... 8

                                i.      The RoC does not have the "force and effect of
                                        law" under the Supreme Court's definition
                                        of that term ............................................................. 9

                                ii.     Plaintiff's proposed definition of "force and
                                        effect of law" is not applicable ............................ 12

II.     The Remaining Claims Must Be Dismissed Because They Duplicate
        the FOIA Claim.................................................................................................... 14

CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

Batterton v. Francis,
   432 U.S. 416 (1977) ................................................................................................ 11

Chrysler Corp. v. Brown,
   441 U.S. 281 (1979) ............................................................................................. 9-14

Creative Non-Violence v. Pierce,
   814 F.2d 663 (D.C. Cir. 1987) ................................................................................ 14

Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,
   452 F.3d 798 (DC Cir. 2006) .................................................................................... 8

FAA v. Cooper,
   132 S. Ct. 1441 (2012) ............................................................................................ 12

Fertilizer Institute v. HHS,
   355 F. Supp. 2d 123 .......................................................................... 10, 11, 12, 13, 14

Forsham v. Harris,
   445 U.S. 169 (1980) ................................................................................................. 6

Hidalgo v. FBI,
   344 F.3d 1256 (D.C. Cir. 2003) ................................................................................ 6

Hopkins v. Women's Div., Gen. Bd. of Global Ministries,
   284 F. Supp. 2d 15 (D.D.C. 2003) ......................................................................... 8, 9

Jones v. U.S. Dep't of Justice,
   576 F. Supp. 2d 64 (D.D.C. 2008) ............................................................................ 6

Oglesby v. U.S. Dep't of the Army,
   920 F.2d 57 (D.C. Cir. 1990) ................................................................................. 5-6

Pohl v. U.S. EPA, et al.,
   No. 09-1480, 2010 WL 4388071 (W.D. Pa. Oct. 29, 2010) ...................................... 15

Rank v. Nimmo,
   677 F.2d 692 (9th Cir. 1982) .................................................................................. 14

Tozzi v. U.S. Department of Health & Human Services,
   271 F.3d 301 (D.C. Cir. 2001) ............................................................................. 13-14

We the People Found., Inc., v. United States,
    485 F.3d 140 (D.C. Cir. 2007) ...................................................................................... 12

Wilbur v. CIA,
    355 F.3d 675 (D.C. Cir. 2004) ...................................................................................... 5

**Statutes**

5 U.S.C. § 552 ................................................................................................................... 2, 14

5 U.S.C. § 553 ................................................................................................................... 12, 13

44 U.S.C. § 3301 ............................................................................................................... 6

PL 105-277, 1998 HR 4328, 112 Stat 2681 (1998) ......................................................... 2

**Regulations**

29 C.F.R. § 1910.1048 ...................................................................................................... 11

29 C.F.R. § 1910.1200 ...................................................................................................... 11

45 C.F.R. § 5.22 ................................................................................................................ 3

45 C.F.R. § 74.36 .............................................................................................................. passim

**Other Sources**

64 Fed. Reg. 54,926, 54,928 (1999) ................................................................................ 13

Plaintiff's Opposition to the Motion to Dismiss seeks to confuse an otherwise straightforward matter.  Plaintiff's Freedom of Information Act (FOIA) request sought records, including data, related to a published research study about formaldehyde.  The Department of Health and Human Services (HHS or "the agency") responded to the request in compliance with its statutory and regulatory obligations.  First, HHS processed the request under FOIA and produced responsive records in its possession, including data underlying the study.  Second, HHS determined that although the request specifically sought "research data" under to the agency's regulation, 45 C.F.R. § 74.36(d)(1), that regulation did not require HHS to request the data from one of the study's researchers and authors, Dr. Luoping Zhang.  Defendants' Motion to Dismiss should be granted because the agency's response complied with both FOIA and HHS's regulation.

The Opposition generally complains about the agency's compliance with the regulation, although it does not state which data are missing from the agency's response or explain what Plaintiff is actually seeking.  Moreover, Plaintiff's Opposition appears to be *enlarging* the FOIA request—Plaintiff now apparently seeks any research data in Dr. Zhang's possession, even data that Plaintiff did not specifically request.  *See* Pl.'s Mem. in Opp. to Mot. to Dismiss ("Opp.") 7 (ECF No. 24).  The Court should not indulge Plaintiff's fishing expedition into Dr. Zhang's records.  HHS's regulation does not require the agency to ask Dr. Zhang for the requested data—not only because the agency has the data and has made it available to Plaintiff and the public, but also because the regulation by its terms does not apply to Plaintiff's request.  The Court should grant the Motion to Dismiss because HHS complied with its regulatory duty under 45 C.F.R. § 74.36(d)(1).

1

## I.     Plaintiff's FOIA Claim Should Be Dismissed

### A.  Different Obligations Exist for Requests for Data Versus Other Records

Plaintiff's FOIA Request ("the Request") did not specifically delineate between its request for research data and other types of records.  *See* Pl.'s Opp. 6-7.  However, both parties agree that the agency is subject to different obligations regarding requests for research data versus other records.  *Id.* at 1 ("[T]he Shelby Amendment applies to 'data' but not other records").[1]  Under FOIA, the agency is required to search its records and produce any responsive agency records, including any data, subject to FOIA exemptions. 5 U.S.C. § 552(a)(3)(A).  Under the Office of Management and Budget's (OMB) Circular A-110, 45 C.F.R. § 74.36(d)(1), the agency is required to forward to a recipient of government research grants certain requests for government-funded "research data."  45 C.F.R. § 74.36(d)(1).  Thus, although Plaintiff's Request generally sought records and did not delineate between the types of records requested, Defendants have analyzed the request for data separately from the request for other records for the purposes of the Motion to Dismiss.

### B.  Obligation Under FOIA

The agency has complied with its obligations under FOIA regarding Plaintiff's Request for records, including data, related to the Zhang Study ("Study").  The agency conducted a search of all its records at both the National Institute of Environmental Health Sciences (NIEHS) and the National Cancer Institute (NCI), and produced, subject

---

[1] The Opposition refers to "the Shelby Amendment."  Pl.'s Opp. 1; *see Omnibus Consol. & Emergency Supplemental Appropriations Act for the Fiscal Year 1999*, PL 105-277, 1998 HR 4328, 112 Stat 2681, 2681-495 (1998).  The Shelby Amendment itself imposes no duty on HHS, and is not the source of the relevant regulatory duty.  *Id.*; *see also* Compl. ¶¶ 40, 48, 58 (ECF No. 1).  Rather, the OMB's Circular A-110, codified at 45 C.F.R. § 74.36(d)(1), is the relevant regulation.

to FOIA's Exemptions, 140 pages of responsive records.  The agency did not exclude data from this search of its records.  Neither the Complaint nor the Opposition asserts that the agency has improperly withheld records or that the agency failed to conduct a reasonable search.  To the extent that Plaintiff is challenging the agency's withholding or search, the agency will file a Motion for Summary Judgment with supporting declaration that documents the processing of the Request.

The agency did not, however, produce records that were already publicly available.  In responding to FOIA requests, HHS will not "handle [a] request under the FOIA and this regulation to the extent it asks for records that are distributed by an HHS program office as part of its regular program activity."   45 C.F.R. § 5.22(b).   An employee of an HHS program office, Dr. Nathaniel Rothman, was a co-author of the Zhang Study and the Study is distributed on the agency's website.  U.S. NAT'L LIB. OF MED., NAT'L INST. OF HEALTH,  http://www.ncbi.nlm.nih.gov/pubmed/20056626  (last visited Nov. 8, 2012) (providing a description of the Study and a link to the full copy). Thus, to the extent the Request sought records, including data, which were in the Zhang Study publication, such records had been "distributed" by HHS and the agency was not obligated to provide the requested records or data again.  See 45 C.F.R. § 5.22.  The agency informed Plaintiff of this decision, stating that it did not provide records that were "incorporated into the Zhang publication" and also noting that "all of the data used in the analysis as set forth in [the] Zhang publication has been released."[2]  See Defs.' MTD Ex. 2 at 2, 3.  Plaintiff's Complaint does not challenge this aspect of the agency's response

---

[2] The data specifically requested in Item 2(f) of the Request are part of the Zhang publication and were, therefore, not provided to Plaintiff.  See Defs.' Mot. to Dismiss ("MTD") 11-12 & n.6 (ECF No. 19-3).

and the Opposition does not discuss the legal question of whether the agency's response

complied with FOIA, which was raised in the Motion to Dismiss.  Defs.' MTD 11-12.

### C.  Obligation Under Circular A-110, 45 C.F.R. § 74.36(d)(1)

The parties agree that Circular A-110, 45 C.F.R. § 74.36(d)(1) only applies to

requests for "research data."  § 74.36(d)(1); *see also* Pl.'s Opp. 1 ("[T]he Shelby

Amendment applies to 'data' but not other records.").

### 1.  As Interpreted by the Agency, Only Item 2(f) of the Request Sought Data Subject to Circular A-110

The agency determined that only Item 2(f) of Plaintiff's Request sought "research

data" subject to Circular A-110, 45 C.F.R. § 74.36(d)(1).  On December 1, 2011, NIEHS

issued a letter responding to Plaintiff's Request.  *See* Compl. Ex. 3 (ECF No. 1-3).  First,

the letter reiterated the records requested by Plaintiff.  *Id.* at 2.  Only one part of the

Request stated it was seeking specific "data"—Item 2(f).  *Id.*  Next, the letter described

that the agency was producing 108 pages of responsive records.  *Id.*  Finally, the letter

stated

> To the extent that your *request under item 2f seeks data* produced under a National Institutes of Health grant *pursuant to* the provisions of Office of Management and Budget (OMB) Revised *Circular A110*, please understand that the provisions of Revised Circular A110 apply to data:
>
> - First produced under a new or competing continuing grant awarded after April 17, 2000, . . . and
> - Cited publicly and officially by the Federal Government in support of an agency action that has the force and effect of law.
>
> *Because the data you have requested* does not meet one or both of the above referenced criteria, NIH will not *forward your request under item 2f to the grantee* for response.

*Id.* at 3 (emphasis added).  In the four-page letter, only these two paragraphs refer to the

agency's obligations under Circular A-110, § 74.36(d)(1).  *Id.* at 3-4 (addressing appeal

rights and noting where records were not found). The December 1 response plainly conveys that the agency had determined that only Item 2(f) of the Request sought research data subject to Circular A-110, 45 C.F.R. § 74.36(d)(1).

Despite this notice, Plaintiff did not disagree or object to the agency's interpretation. On January 4, 2012, Plaintiff filed an administrative appeal, responding to the December 1 letter. Compl. Ex. 4 (ECF No. 1-4). The appeal itself *quoted* the agency's decision that "NIH will not forward [the] request under item 2(f) to the grantee [Ms. Zhang] for response." *Id.* at 6 (quoting the December 1 letter). Despite repeating the agency's interpretation that only item 2(f) was relevant to obligations under Circular A-110, § 74.36(d)(1), the appeal did not challenge the agency's interpretation. Rather, the appeal argued only that the government action at issue had the force and effect of law and that, therefore Circular A-110, § 74.36(d)(1) applied. *Id.* at 6-7. There was nothing in the appeal that would put the agency on notice that its interpretation of Plaintiff's Request was being challenged.

Plaintiff may not now come to this Court and challenge the agency's interpretation. A plaintiff must exhaust the administrative remedies available under FOIA prior to seeking relief in federal court. *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990); *see also Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) ("[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." (citation and quotation marks omitted)). As the Court of Appeals explained, exhaustion is necessary "so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61. Allowing Plaintiff to now challenge the agency's

interpretation "'would cut off the agency's power to correct or rethink initial misjudgments or errors.'"  *Hidalgo v. FBI*, 344 F.3d 1256, 1258-60 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 64).  To the extent that Plaintiff brings a claim based on the agency's failure to forward to Dr. Zhang its request for data *other than* the data mentioned in Item 2(f), such a claim has not been administratively exhausted and must be dismissed under Fed. R. Civ. P. 12(b)(6).  *See Jones v. U.S. Dep't of Justice*, 576 F. Supp. 2d 64, 66 (D.D.C. 2008) ("When a FOIA defendant disputes that a FOIA plaintiff has fulfilled the exhaustion requirement, the matter is properly the subject of a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.").[3]

Moreover, Plaintiff's academic discussion of the definition of data is not relevant to determining the interpretation or scope of the Request.  *See* Pl.'s Opp. 5-7.  The parties agree that, generally, a request *under FOIA* for records can necessarily include all types of responsive agency records, including data.  *See* Opp. 6-7; *see also Forsham v. Harris*, 445 U.S. 169, 183 (1980) (defining agency records by reference to the Records Disposal Act, 44 U.S.C. § 3301 (1980)).  Thus, in response to FOIA requests, the agency has produced the Zhang Study data as an agency record.  *See, e.g.*, Defs.' MTD Ex. 4 (response to the Jain request).  However, the agency analyzed the Request *under Circular A-110*, 45 C.F.R. § 74.36(d)(1), which applies to a "request for *research data* relating to published research findings."  *Id.* (emphasis added).  It was reasonable for the agency to conclude that only Item 2(f) was "request[ing] research data," *id.*, since that was the only part of the Request that specifically sought "data."  Compl. Ex. 1 at 2.  In fact, contrary to

---

[3] Even if the Court disagreed, Circular A-110 does not apply to any data requested by Plaintiff, for the same reasons described *infra* Part I.C.2.

Plaintiff's claims, the language of Circular A-110, § 74.36(d)(1) "spell[s] out" that a request must specifically seek "research data" in order for the provision to be applicable. *See* Pl.'s Opp. 7.   Such a requirement makes sense, as otherwise the agency would be forwarding vague, lengthy requests to the private, third party researchers/grant recipients, leaving these individuals to interpret what "data" were actually being sought from a request.

Finally, although the Opposition objects to the agency's interpretation, it espouses no countervailing interpretation of the Request.   Nor does it even attempt to clarify what data Plaintiff seeks from Dr. Zhang.   Plaintiff apparently wants to go on a fishing expedition into Dr. Zhang's data files.   Circular A-110, § 74.36(d)(1) requires a more specific explanation of what data are requested, which further supports the agency's (unchallenged) interpretation of the Request.

## 2.   Circular A-110, § 74.36(d)(1) Does Not Apply

### a.   Circular A-110 Does Not Apply to Publicly Available Data

As a matter of law, Circular A-110, 45 C.F.R. § 74.36(d)(1) imposes no obligation on an agency if the agency already has the requested research data.   The regulation requires that certain research data be requested from a researcher/grantee so that it "can be made available to the public through the procedures established under the FOIA."   *Id.*; *see also* Defs.' MTD 12.   Implicit in the regulation is an understanding that the research data are not *already* "available to the public" under FOIA by virtue of being agency records.   45 C.F.R. § 74.36(d)(1).   If the requested research data are already "available to the public," the language of Circular A-110, § 74.36(d)(1) imposes no legal obligation on an agency.   The Opposition does not respond to this legal argument, which

was raised in Defendants' opening brief, and Plaintiff has, therefore, conceded the point. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

As a factual matter, the data requested by Plaintiff in Item 2(f) are already "available to the public" and, thus, Circular A-110, § 74.36(d)(1) is inapplicable.  The data requested in Item 2(f) are "available to the public" because they are contained in the published Study, which is distributed on the agency's website.  *See* Defs.' MTD 12-13 & n.6 (describing where in the published Study the data is located).  Thus, FOIA applies to these records and Circular A-110, § 74.36(d)(1) imposes no burden on the agency regarding the request for the Item 2(f) data.  To the extent that the Court determines that it needs to consider matters outside the pleadings to grant the Motion to Dismiss on this issue, it may convert the Motion to Dismiss into one for Summary Judgment, as provided for in Fed. R. Civ. P. 12(d).[4] *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (DC Cir. 2006).

### b.  Circular A-110 Does Not Apply by Its Terms

Even if the requested data were not already available to the public, Circular A-110, 45 C.F.R. § 74.36(d)(1) is not applicable here because the terms of the regulation are not met.  The regulation provides that

---

[4] Defendants, however, believe a Summary Judgment Motion is unnecessary because Defendant's Motion to Dismiss provides a sufficient legal basis to dismiss Plaintiff's claims as a matter of law.

> in response to a Freedom of Information Act (FOIA) request for research data relating to published research findings produced under an award that was used by the Federal Government in developing an agency action that has *the force and effect of law*, the HHS Awarding Agency shall request, and the recipient shall provide, within a reasonable time, the research data so that they can be made available to the public through the procedures established under the FOIA.

*Id.* (emphasis added).  The regulation is only triggered if the data are used in a government action that "has the force and effect of law."  *Id.*  Plaintiff incorrectly contends that the Twelfth Report on Carcinogens ("RoC") is such an action.  *See* Pl.'s Opp. at 9.[5]  The Twelfth version of the RoC changed its classification of formaldehyde from "reasonably anticipated to be a human carcinogen" to "known to be a human carcinogen," and cited to the Zhang Study as evidence.  *See* Compl. ¶¶ 10, 18.  Although this Court is the first to analyze the RoC under Circular A-110, § 74.36(d)(1), precedent from the Supreme Court controls that analysis and dictates that the RoC does not have the "force and effect of law."

### i. The RoC does not have the "force and effect of law" under the Supreme Court's definition of that term

The Supreme Court has defined when an agency action has the "force and effect of law."

> In order for a regulation to have the "force and effect of law," it must have certain substantive characteristics and be the product of certain procedural requisites. The central distinction among agency regulations found in the APA is that between "*substantive rules*" on the one hand and "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. . . . We described a substantive rule—or a "legislative-type rule,"—as one "affecting individual rights and obligations." This characteristic is an important touchstone for distinguishing those rules that may be "binding" or have the "force of law." . . . That an agency regulation is "substantive," however, does not by itself give it

---

[5] By failing to discuss the issue in its Opposition, Plaintiff has conceded that the Draft EPA Toxicological Review of Formaldehyde-Inhalation (2010) is not an agency action that has the "force and effect of law."  *See* Defs.' MTD 17-19.  Therefore, this Court can rule in Defendant's favor on that issue.  *See Hopkins*, 284 F. Supp. 2d at 25.

> the "force and effect of law." The legislative power of the United States is vested
> in the Congress, and the exercise of quasi-legislative authority by governmental
> departments and agencies must be rooted in a grant of such power by the
> Congress and subject to limitations which that body imposes.

*Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979) (internal citations omitted).  This

precedent is binding on this Court and provides the framework for evaluating whether the

RoC has the "force and effect of law."

     *The RoC is not a "substantive rule."*   Under the Supreme Court's definition, the

RoC do not have the "force and effect" of law because it is not a "substantive rule," as

required by *Chrysler Corp.*  The RoC is not a "substantive rule" because it does not *itself*

"affect[] individual rights and obligations."   *Chrysler Corp.*, 441 U.S. at 302; *see also*

Defs.' MTD 15-16.  Plaintiff does not dispute that the listing of formeldehylde on the

RoC does not impose an "obligation" on it.  *See* Defs.' MTD 15.  Rather, Plaintiff argues

that the listing creates a chain reaction which results in a separate agency—the

Occupational Safety and Health Administration (OSHA)—creating an "obligation" for

manufacturers.  Pl.'s Opp. 9, 11-12.  But it is the RoC that itself must be a "substantive

rule," not some other action by an entirely different agency.  *Chrysler Corp.*, 441 U.S. at

301 ("In order for a regulation to have the "force and effect of law," *it must have* certain

substantive characteristics  . . . . (emphasis added)).

     Plaintiff's exact argument was rejected by this court in *Fertilizer Institute v. HHS*,

355 F. Supp. 2d 123, 126-127.  *Fertilizer Institute* is persuasive authority here because, in

that case, the court was also considering whether the listing of a carcinogen was a

"substantive rule"—the same determination necessary to this Court's analysis under

*Chrysler Corp.*  *See* Pl.'s Opp. 10 (incorrectly arguing that *Fertilizer Institute* is not

relevant).  The *Fertilizer Institute* court determined that the listing of a carcinogen was

not a "substantive rule" because although the inclusion of a carcinogen on the RoC "may trigger obligations under other agency regulations, the *mere listing itself* does not create any rights or duties and therefore is not a substantive rule." *Fertilizer Inst.*, 355 F. Supp. 2d. at 127 (emphasis added).

Moreover, even if an action by a separate agency could contribute to finding the RoC to be a "substantive rule," OSHA's requirement does not do so here.  Because formaldehyde was categorized by as a hazardous chemical prior to its inclusion in the RoC as a carcinogen, OSHA already required chemical manufacturers to develop a safety data sheet for it.  29 C.F.R. § 1910.1048; *Formaldehyde and Cancer Risk*, NAT'L CANCER INST. AT THE NAT'L INSTS. OF HEALTH, http://www.cancer.gov/ cancertopics/factsheet/Risk/formaldehyde (last visited Nov. 8, 2012).  After the Twelfth RoC, the only practical difference is that, within the safety data sheet they are *already required to produce*, a chemical manufacturer must change their answer to "Whether the hazardous chemical is listed in the National Toxicology Program (NTP) Report on Carcinogens" from "no" to "yes".  29 C.F.R. § 1910.1200 App D (11)(e).  As the *Fertilizer Institute* court found, such a slight change in OSHA's requirement does not result in the RoC being considered "a substantive rule."  355 F. Supp. 2d. at 127 & n.3 (rejecting the same argument as to another substance).

*The RoC is not "rooted in a grant of power."*  HHS's promulgation of the RoC is not "rooted in a grant of such power" from Congress, such that it "conform[s] with . . . procedural requirements" necessary for the action to have the force and effect of law. *Chrysler Corp.*, 441 U.S. at 302-03.  For an agency action to be rooted in a grant of power, it must be an "exercise of quasi-legislative authority by governmental departments

and agencies" that is issued "pursuant to statutory authority" in order to "implement the statute." *Id.* (internal quotation marks omitted) (citing *Batterton v. Francis*, 432 U.S. 416, 425 n. 9 (1977)).   The RoC is not promulgated from such a grant of power. Congress mandated that HHS create the RoC, but that authority did not carry with it any ability or discretion to impose rights, duties, or obligations because of the inclusion of carcinogens in the RoC.   "In publishing the RoC, NTP does not invoke legislative authority, rather it follows a congressional directive." *Fertilizer Institute*, 355 F. Supp. 2d at 127.

Because the RoC does not meet either prong of the *Chrysler Corp.* test, it is not an agency action that has "the force and effect of law."

### ii. Plaintiff's proposed definition of "force and effect of law" is not applicable

The Opposition does not apply the Supreme Court's precedent defining "force and effect of law," or respond to Defendants' analysis thereof.   Rather, it wrongly argues that other legal sources should govern the definition of "force and effect of law."   This Court is not free to abandon the Supreme Court's precedent applicable here.   *We the People Found., Inc., v. United States*, 485 F.3d 140, 143-44 (D.C. Cir. 2007).   Moreover, when a regulation uses a legal term of art, such as "force and effect of law," courts may assume that the agency is using the term in conformance with how that term has been defined in judicial precedent.   *See FAA v. Cooper*, 132 S. Ct. 1441, 1449 (2012) (holding when Congress uses a "legal term of art," it adopts the clustered ideas that were attached to each borrowed word in the body of learning from which it was taken).

In any event, Plaintiff's efforts to redefine "force and effect of law" are not persuasive.   First, Plaintiff encourages the Court to look into the legislative history of the

regulation.   The legislative history of the regulation is at best ambiguous and therefore unhelpful to Plaintiff.   The preamble in the final notice for Circular A-110, quoted by Plaintiff, addressed what the term "force and effect of law" was intended to mean.   64 Fed. Reg. 54,926, 54,928-29 (1999) (emphasis added).   *See* Pl.'s Opp. 10.   Specifically, it explained why OMB chose the "agency action that has the force and effect of law" language over "regulation."

> We sought to refer to agency actions that have "the force and effect of law" when [the prior version] included "a regulation (for which notice and comment is required under 5 U.S.C. 553)" in the proposed definitions.   While it is true that agencies also take actions that have "the force and effect of law" when they issue administrative orders (e.g., decisions issued by administrative law judges), we think that agencies rarely rely on Federally-funded research in the context of their administrative orders.   Nevertheless, in response to the comments, we have changed the revision to refer to "an agency action that has the force and effect of law" rather than to "a regulation.". . .   However, as stated in the August 11th notice, we have decided not to extend the scope of the revision to agency guidance documents and other issuances that do not have the force and effect of law.   We continue to believe that the public interest in such access is less than where the agency is taking action that has the force and effect of law, and that the revision would not be workable in those circumstances.

64 Fed. Reg. 54,926, 54,928-29 (1999) (emphasis added).   Thus, OMB intended to cover agency actions that have the force and effect of law, like regulations for which notice and comment are required under 5 U.S.C. § 553 and administrative orders, and not to cover agency guidance documents and other issuances that do not have the force and effect of law, such as the RoC.   *Id.*

Second, Plaintiff mistakenly relies upon *Tozzi v. U.S. Department of Health & Human Services*, to provide the definition of "force and effect of law."   271 F.3d 301 (D.C. Cir. 2001).   Although *Tozzi* also dealt with the listing of a carcinogen in the RoC, unlike *Fertilizer Institute*, the *Tozzi* court did not consider whether that listing was a "substantive rule," as this Court must under *Chrysler Corp.*   Rather, the *Tozzi* court

considered whether the plaintiff had standing to bring an action regarding the listing of a carcinogen on the RoC and whether the court had jurisdiction to review the agency's action. 271 F.3d at 307-311. The standards applicable to those analyses are not the same as those for determining whether the action is a "substantive rule."[6] For this reason, the *Fertilizer Institute* court addressed and distinguished *Tozzi*. 355 F. Supp. 2d at 127 (stating that in *Tozzi*, the D.C. Circuit found that "listing a substance on the RoC has sufficient 'binding effect' to establish *only* the reviewability of the agency action" (emphasis added)). Because *Tozzi* did not analyze the Supreme Court's applicable standard for determining whether the RoC has the "force and effect of law," it is not applicable precedent.

## II.    The Remaining Claims Must Be Dismissed Because They Duplicate the FOIA Claim

As explained, the research data requested by Plaintiff are part of the Zhang Study, which is distributed on the agency's website. *See* Defs.' MTD 11-12. Those records are subject to FOIA and FOIA is the proper remedy for Plaintiff's claims. *See* 5 U.S.C. § 552(f)(2)(A). There can be, therefore, no question about whether the Administrative Procedure Act or the Mandamus statute provides a remedy to Plaintiff, because neither statute provides relief where an adequate remedy is available under FOIA. *See* Defs.'

---

[6] The *Tozzi* court noted that causation and traceability standing analyses need not prove that "the alleged injury flows [] directly from the challenged agency action" but only that "the agency action is at least a substantial factor motivating the third parties' actions." 271 F.3d at 308 (citing *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987)). The *Tozzi* court also found that the action was reviewable because other agencies used the RoC to require the plaintiffs to act. *Id.* But the Supreme Court's test for whether an action "has the force or effect of law" requires a more substantial thorough showing: that the agency action must "(1) prescribe substantive rules—not interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements." *Rank v. Nimmo*, 677 F.2d 692, 698 (9th Cir. 1982) (citing *Chrysler Corp.*, 441 U.S. at 301).

MTD 21-23, 26-27. *Contra Pohl v. U.S. EPA, et al.*, No. 09–1480, 2010 WL 4388071, at

*5 (W.D. Pa. Oct. 29, 2010) (finding the APA applicable because the agency did not have

the requested data and thus it was not an "agency record" subject to FOIA).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be granted

and this case should be dismissed under Fed. R. Civ. P. 12(b)(1) & (6).

DATED: December 26, 2012

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

/s/ Karen P. Seifert
KAREN P. SEIFERT
Trial Attorney (NY Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6112
Washington, D.C. 20530
Tel. (202) 305-0891 / Fax: (202) 616-8470
Email: karen.p.seifert@usdoj.gov

*Attorneys for Defendants*