UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CHEMISTRY COUNCIL,
INC.,

     Plaintiff,

          v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et
al.*,

     Defendants.

Civil Action No. 12-1156 (JEB)

## MEMORANDUM OPINION

In November 2011, Plaintiff American Chemistry Council submitted a Freedom of

Information Act request to a division of the Department of Health and Human Services.  ACC

sought records pertaining to a federally funded study that had considered the potential health

effects of exposure to formaldehyde.  The study's findings had led HHS to elevate

formaldehyde's carcinogenic status in its biennial Report on Carcinogens.  Unhappy with HHS's

response to its FOIA request, Plaintiff then brought this suit alleging that Defendants' search of

their records was inadequate and that they improperly refused to request research data from the

study's authors.  ACC seeks relief under FOIA and the Administrative Procedure Act, as well as

a writ of mandamus.

Defendants – HHS and three of its component agencies – now move to dismiss under

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  Because the only research data sought

from the authors is publicly available, the Court will grant Defendants' Motion on that issue.

The Court, however, agrees with ACC that it is premature to conclude that Defendants

performed an adequate search of their own records.  Finally, because FOIA already provides

sufficient relief, the Court will dismiss Plaintiff's alternative claims under the APA and for

mandamus.

**I.      Background**

    A.   Report on Carcinogens

In 1978, Congress ordered HHS to begin publishing "a biennial report which contains . . .

a list of all substances . . . [that] are known to be carcinogens or may reasonably be anticipated to

be carcinogens and . . . to which a significant number of persons . . . are exposed [and] . . .

information concerning the nature of such exposure."  42 U.S.C. § 241(b)(4)(A)-(B); see

Community Mental Health Centers Extension Act of 1978, Pub. L. No. 95-622, § 262(10), 92

Stat. 3412, 3435.  Pursuant to that congressional mandate, a component entity of HHS has

subsequently published twelve "Report[s] on Carcinogens" (RoC).  See About the Report on

Carcinogens, Nat'l Toxicology Program, http://ntp.niehs.nih.gov/?objectid=03C9B512-ACF8-

C1F3-ADBA53CAE848F635 (last updated Sept. 7, 2012) ("The 12th RoC, the latest edition,

was published on June 10, 2011.").

Formaldehyde, "a colorless, flammable gas that is used in aqueous solution to

manufacture building materials and many household products," was first listed in the second

edition of the RoC.  See Compl., ¶¶ 9-10; Nat'l Toxicology Program, Dep't of Health & Human

Servs., Report on Carcinogens 195 (12th ed. 2011) ("12th RoC").  For the ensuing thirty years,

the Report classified the substance in a lesser carcinogenic category – namely, "reasonably

anticipated to be a human carcinogen."  See 12th RoC at 195.  The 12th RoC, however, upgraded

it to the more severe category of "known to be a human carcinogen."  See id.  In doing so, the

report cited, *inter alia*, Luoping Zhang *et al.*, Occupational Exposure to Formaldehyde,

<u>Hematoxicity, and Leukemia-Specific Chromosome Changes in Cultured Myeloid Progenitor</u>

<u>Cells</u>, 19 Cancer Epidemiology, Biomarkers & Prevention 80 (2010) (Zhang Study).  <u>See id.</u> at

195, 197-200.  The Zhang Study is a published scientific research article that was funded, at least

in part, by federal grants disbursed by Defendants.  Compl., ¶¶ 5, 14.

   B.  <u>OMB Circular A-110</u>

The relationship between FOIA and federally funded grantees is governed in part by the

Shelby Amendment.  This 1999 legislation directed the Office of Management and Budget to

amend its Circular A-110 – its full title is "Uniform Administrative Requirements for Grants and

Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit

Organizations" – "to require Federal awarding agencies to ensure that all data produced under an

award will be made available to the public through the procedures established under [FOIA]."

Omnibus Consol. & Emergency Supplemental Appropriations Act for the Fiscal Year 1999, Pub.

L. No. 105-277, 112 Stat. 2681-495 (1998).  OMB, in response, revised Circular A-110 to reflect

its current form.  It states, in relevant part:

> [I]n response to a [FOIA] request for <u>research data</u> relating to
> published research findings produced under an award that were
> used by the Federal Government in developing an agency action
> that has the force and effect of law, the Federal awarding agency
> shall request, and the recipient shall provide . . . the research data
> so that they can be made available to the public through the
> procedures established under the FOIA.

OMB Circular A-110 § __.36(d)(1) (emphasis added).  HHS has since codified Circular A-110 in

the Code of Federal Regulations.  <u>See</u> 45 C.F.R. § 74.36(d)(1)-(2).

   C.  <u>Plaintiff's FOIA Request</u>

On November 7, 2011, ACC's Assistant General Counsel submitted a FOIA request for

"all Records related to [the Zhang Study]," including any records related to the federal grants

that provided funding to the study.  Compl., Exh. 1 (FOIA Request) at 1.  Plaintiff specifically

demanded three categories of documents: (1) "Records related to the protocol and methodology

for conducting the [Zhang] Study"; (2) "Records related to the information and data obtained

regarding the [Zhang] Study subjects"; and (3) "Records related to any analyses, results, . . .

findings and conclusions" of the Zhang Study.  Id. at 1-2.  Under item 2, Plaintiff sought:

> 2.  All Records related to the information and data obtained
> regarding the Study subjects.  These include all Records
> concerning:
>
> > a.  Original questionnaires administered to Study subjects by
> > trained interviewers requesting such information as
> > occupational history, environmental exposures, medical
> > history and current medications, and past and current
> > tobacco and alcohol use.
> >
> > b.  Spreadsheets or other Records that were developed in order
> > to summarize and/or analyze the information collected as
> > part of the questionnaires administered to each Study
> > subject.
> >
> > c.  Records identifying the specific factory at which each
> > Study subject was employed.
> >
> > d.  Records identifying the specific Chinese or Western
> > medicines used by each Study subject.
> >
> > e.  Records containing the laboratory analytical results from
> > the exposure monitoring conducted with UME diffusion
> > samplers worn by each Study Subject.
> >
> > f.  <u>Data and methods used for estimating 8-hr time weighted
> > average levels for control subjects and exposed subjects</u>.
> >
> > g.  Records that provide the Study subjects' individual clinical
> > chemistry results, to include laboratory standardization,
> > laboratory reference values and interlaboratory comparison
> > statistics.

Id. at 2 (emphasis added).

In a December 1 letter communicating the Agency's "final response" to Plaintiff's FOIA request, HHS attached 108 pages of documents, but refused to forward ACC's request under 2f to the Zhang Study's grantees pursuant to Circular A-110.  See Compl., Exh. 3 (Final Response Letter) at 3.  The Agency explained:

> To the extent that your request under item 2f seeks data produced under [an agency] grant pursuant to the provisions of [Circular A-110], please understand that that the provisions of Revised Circular A110 apply to data:
>
> - First produced under a new or competing continuing grant awarded after April 17, 2000, (the day [HHS] amended 45 C.F.R. Part 74 to implement Revised Circular A110); and
>
> - Cited publicly and officially by the Federal Government in support of an agency action that has the force and effect of law.
>
> Because the data you have requested does not meet one or both of the above referenced criteria, [the Agency] will not forward your request under item 2f to the grantee for response.

Id.

Plaintiff appealed this final response arguing, *inter alia*:

> In the [Agency's final] Response, [the Agency] contends that the provisions of OMB Circular A-110 apply to data (1) first produced under a new or competing continuing grant awarded after April 17, 2000, and (2) cited publicly and officially by the Federal Government in support of an agency action that has the force and effect of law.  [The Agency] further contends that "because the data you have requested does not meet one or both criteria, [the Agency] will not forward your request under item 2f to the grantee for response."  Since the grants at issue were awarded well after April 17, 2000, it appears that NIH is asserting that the Study has not been "cited publicly and officially by the Federal Government in support of an agency action that has the force and effect of law."

Compl., Exh. 4 (FOIA Appeal Letter) at 6.  The remainder of that portion of the appeal argued solely that the Zhang Study had been cited in the 12th RoC and draft EPA regulations, both of

which Plaintiff asserted had the force and effect of law.  Id.  ACC, however, did not address whether Circular A-110 should apply to items other than 2f.

The Agency responded to the appeal approximately one month after Plaintiff had filed the instant lawsuit.  See Opp., Exh. 2 (HHS Response to Appeal) at 1.  In it, HHS determined that it did not need to request data from the Zhang Study's grantees because neither the RoC nor the draft EPA regulations were final agency actions having the force and effect of law.  Id. at 4.  It did, however, enclose thirty-two pages of additional records that were retrieved from a component of HHS that had not been previously searched.  Id. at 2.

In bringing its suit, Plaintiff alleges that Defendants violated FOIA and Circular A-110 both because their search of their own records was inadequate and because they failed to request data from the Zhang Study's grantees.  Plaintiff seeks relief under FOIA (Count I), the APA (Count II), and mandamus (Count III).

## II.    Legal Standard

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).  This standard governs the Court's considerations of Defendants' Motions under both Rules 12(b)(1) and 12(b)(6).  See Scheuer v. Rhodes, 416 U.S.

232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 926-26 (D.C. Cir. 1984) (same).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting Scheuer, 416 U.S. at 236).

**III.    Analysis**

In moving to dismiss, Defendants argue principally that Plaintiff's FOIA claim is deficient.  In addition, because FOIA offers ACC an adequate remedy, Defendants maintain that the Court lacks subject-matter jurisdiction to hear Plaintiff's APA cause of action and that Plaintiff fails to state a claim for mandamus.  The Court considers these counts separately.

   A.  <u>FOIA (Count I)</u>

A FOIA request that comports with Circular A-110's applicable requirements imposes a dual responsibility upon agencies: Not only must they produce their own responsive "records," but they must also request "research data" from the grantees of the pertinent federally funded research study.  The Court, therefore, first reviews the Agency's refusal to request research data from the Zhang Study's grantees and then turns to the adequacy of its search of its own records.

   1.  *Data from Zhang Study Grantees*

Circular A-110 states, "[I]n response to a [FOIA] request for research data relating to published research findings produced under an award that were used by the Federal Government in developing an agency action that has the force and effect of law, the HHS Awarding Agency shall request, and the recipient shall provide, . . . the research data."  45 C.F.R. § 74.36(d)(1). The Court and the parties agree that Circular A-110 only applies to requests for "research data," not to other types of agency records.  <u>See, e.g.</u>, Opp. at 1 (acknowledging the parties' agreement).  As a threshold matter, therefore, only those portions of Plaintiff's FOIA request that seek research data fall within Circular A-110's purview.  Defendants determined that only item 2f sought research data.  Whether or not that conclusion was correct, Plaintiff has forfeited any objection to it.

   a.  Agency Interpretation of FOIA Request

While the Court remains cognizant of agencies' "duty to construe . . . FOIA request[s] liberally," Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995), such requests must also "'reasonably describe' the records requested." Landmark Legal Found. v. EPA, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (quoting 5 U.S.C. § 552(a)(3)). Agencies, consequently, need not expand their searches beyond "the four corners of the request," nor are they "required to divine a requester's intent." Id. (citing Kowalczyk v. Dep't of Justice, 73 F.3d 386, 388-89 (D.C. Cir. 1996)). Within this framework, the Court bears in mind Circular A-110's definition of "research data" as "the recorded factual material commonly accepted in the scientific community as necessary to validate research findings, but not any of the following: preliminary analyses, drafts of scientific papers, plans for future research, peer reviews, or communications with colleagues." 45 C.F.R. § 74.36(d)(2)(i).

Because Plaintiff's FOIA request generally refers to "records," as opposed to specifically differentiating between research data and other types of agency records, Defendants "interpreted Item 2(f) to be the only part of the Request that sought 'research data' from the Zhang Study." Mot. at 11. Plaintiff takes issue with that interpretation, insisting that the "use of the term 'Records' throughout its request" also encompassed data. Opp. at 7. The Court disagrees that Plaintiff's general references to "records" reasonably described a request for data. To invoke Circular A-110, which pertains to data but not records, Plaintiff knew it should specifically request data. Indeed, when Plaintiff wanted to ask for data, it did so: Twice in item 2, Plaintiff mentioned "data" specifically. First, in the catchall before the list of specific items sought, Plaintiff asked for "[a]ll Records related to the information and data obtained regarding the Study subjects." FOIA Request at 2. Then, in item 2f, Plaintiff asked for "[d]ata and methods used for estimating 8-hr time weighted average levels for control subjects and exposed subjects." Id.

The harder question is whether that catchall in item 2 sufficiently signaled a desire for data beyond the narrow request in 2f. The best case for Plaintiff is <u>LaCedra v. Executive Office for U.S. Attorneys</u>, 317 F.3d 345 (D.C. Cir. 2003). In <u>LaCedra</u>, the D.C. Circuit faced a similar request when a *pro se* prisoner asked for "all documents pertaining to my case" and then "[s]pecifically . . . request[ed]" certain enumerated documents. <u>Id.</u> at 346. Despite recognizing that this style of request "is not a model of clarity," the D.C. Circuit held that the request should be read to seek all documents covered by the catchall because the Government has an obligation to construe FOIA requests liberally, and because the request is "reasonably susceptible to the broader reading." <u>Id.</u> at 348. Here, the request is even less clear in that it sought "all Records <u>related to</u> the . . . data obtained regarding the Study subjects." FOIA Request at 2 (emphasis added). Asking for records "related to" the data is not the same as asking for the data. <u>Cf. id.</u> (requesting, in item 2f, "[d]ata and methods used for estimating 8-hr time weighted average levels for control subjects and exposed subjects"). The Court sympathizes with Defendants worry that, absent greater specificity, the Agency would be forced to forward "vague, lengthy requests to the private, third party [grantees], leaving [those grantees] to interpret what 'data' were actually being sought from a request." Reply at 7.

In the end, it is essentially a toss-up whether item 2's catchall reasonably described a request for research data from the Zhang Study's grantees beyond the specific request in 2f. Luckily (for the Court at least), it need not resolve the question because Plaintiff's request on this point suffers from an independent flaw.

                b.  Plaintiff's Forfeiture

What converts a close call to an easier one is Plaintiff's subsequent forfeiture during the FOIA appeals process. The D.C. Circuit and other circuits "have consistently confirmed that the

FOIA requires exhaustion of [the statutorily prescribed FOIA administrative appeal process] before an individual may seek relief in the courts." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (collecting cases).  Courts require administrative exhaustion as a prerequisite to judicial review "so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Id. at 61.

Defendants interpreted the request to seek data from the Zhang Study grantees only through item 2f.  Plaintiff does not dispute that it failed to object to this interpretation in its FOIA appeal letter.  Instead, ACC argues that "[t]here was simply no reasonable indication in [the Final Response Letter] that Defendants had adopted any particular 'interpretation' of the FOIA request."  Opp. at 8.  Although Plaintiff's argument has some appeal, it does not persuade the Court.  For two reasons, the Court believes that Plaintiff's "reasonable reader," id., would have realized that the Agency had understood the request to seek no data other than that pursued in item 2f.

First, Defendants' Final Response Letter referred to research data and Circular A-110 only in the context of item 2f: "To the extent that your request under item 2f seeks data produced under [an agency grant], please understand that the provisions of Revised Circular A110 apply to data . . . .  Because the data you have requested does not meet [Circular A-110's] criteria, NIH will not forward your request under item 2f to the grantee for response."  Final Response Letter at 3.  Indeed, as Defendants note, Plaintiff's administrative appeal "itself quoted the agency's decision that '[it] will not forward [the] request under item 2(f) to the grantee . . . for response.'"  Reply at 5 (emphasis in original).  Plaintiff should have wondered why the portions of the Final Response Letter that discussed other items in the request – items that Plaintiff contends sought research data – made no reference to the requirements of Circular A-110.

Second, it is obvious from the Final Response Letter that the Agency ignored all the catchalls in its search (and, in particular, ignored item 2's catchall).  The response letter presented the Agency's responses to each small-lettered item.  See, e.g., Final Response Letter at 2 ("Enclosed are 108 pages responsive to your request under items 1a, 1b, 1c, 1d, 3a, and 3b."); id. at 3 ("The Division of Extramural Research and Training (DERT) searched its files and no records responsive to your request under items 2a through 2g were located.").  Yet the letter never referenced any searches for records responsive to the catchalls.  Again, if Plaintiff had believed that the catchalls posed additional requests for research data, it should have wondered why the Agency had not explained its position on data responsive to item 2's catchall.  Instead, in its Appeal Letter, ACC simply never mentioned research data beyond 2f.  Nor can Plaintiff be saved by arguing that "Defendants did not satisfy the requirement that they provide the reasons for their denial" in failing to respond to the catchalls.  Opp. at 8 (citing Occidental Petroleum Corp. v. SEC, 662 F. Supp. 496, 498-99 (D.D.C. 1987)).  Plaintiff forfeited any such challenge by failing to raise it before the Agency.

Plaintiff, therefore, was on notice that the Agency had not sought research data other than that requested in item 2f.  Plaintiff is a sophisticated entity whose FOIA correspondence (including its appeal) was authored by its Assistant General Counsel.  Even if HHS's interpretation of the request was wrong, Plaintiff forfeited its right to challenge that interpretation because it failed to exhaust its administrative remedies on the issue before the Agency.

c.   Agency's Obligation Under Item 2f

Having determined that item 2f was the only portion of Plaintiff's request that sought research data from the Zhang Study's grantees, the Court now considers whether Defendants fulfilled their obligations under Circular A-110.  Because the data in item 2f was already fully

incorporated in the Zhang Study, which Defendants had made publicly available through their website, their refusal to request that data from the study's grantees was proper.

Under FOIA, an agency need not search "for copies of documents where the agency itself has [already] provided an alternative form of access." Tax Analysts v. U.S. Dep't of Justice, 845 F.2d 1060, 1065-67 (D.C. Cir. 1988) (holding that copies of court records only had to be "made available in an agency reading room . . . . The [Agency] is not required by statute to mail copies [of the records] . . . nor even to provide a requester-convenient location for access") (emphasis in original).  Defendants themselves have codified similar standards for processing the FOIA requests they receive.  See 45 C.F.R. § 5.22(b) (Defendants will not "handle [a] request under the FOIA . . . to the extent it asks for records that are distributed by an HHS program office as part of its regular program activity.").  Within this construct, OMB received public comments during its drafting of Circular A-110 that suggested, "[I]f a request is made for research data the recipient has already made available to the public . . . further action should not be necessary." OMB Circular A-110 (Final Revision), 64 Fed. Reg. 54926, 54928 (Oct. 8, 1999).  OMB, in response, advised: "Since this principle is used when a Federal agency responds to FOIA requests, it makes sense to apply it [to the Circular] as well.  However, the Federal awarding agency should respond to the FOIA request with directions on how the requester can access the publicly available research data."  Id.

HHS has previously provided public access to the full-length Zhang Study through the website of its component, the National Institute of Health.  See Zhang Study, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2974570 (last visited Feb. 6, 2012).  The data requested in item 2f, moreover, are already fully incorporated in the Zhang Study.  See Zhang Study at 82-84 (providing data collection for calculating 8-hour time-weighted average and

actual weighted averages in successive Tables 1 and 2).  As a result, Circular A-110 does not

require them to re-request that data from the Zhang Study's grantees.  Such a ruling, of course,

does not preclude ACC from subsequently filing a more precise FOIA request that specifically

seeks data from the grantees beyond item 2f.

Given the Court's conclusion that HHS has complied with the Circular's dictates for the

only research data requested, the Court need not address the Circular's additional requirement

that the Zhang Study be cited in an agency action having the force and effect of law.  The Court

thus offers no opinion on whether either the EPA's draft regulations or the RoC has a "legal

effect" under this Circuit's precedent.

### 2. *Request for Defendants' Agency Records*

This determination does not entirely resolve ACC's FOIA claim since Plaintiff did not

only seek data from the Zhang Study's grantees.  In addition, ACC requested broader categories

of documents in the Agency's possession.  See FOIA Request at 1-2.  In Count I, Plaintiff alleges

that Defendants' search of their own records for these documents was inadequate.  See Compl., ¶

27 ("[D]espite explicit references to NCI . . . NIH referred Plaintiff's request only to . . . NIEHS

for response.  Accordingly, Defendants did not search the records of any NIH entity other than

NIEHS for information responsive to the request."); see also id., ¶ 32 ("Defendants are in

possession or control of, or have an obligation to obtain, Requested Records.").  The Court must

also decide, therefore, whether this remaining component of Plaintiff's FOIA claim survives.

To fulfill its obligation under FOIA, an agency must "demonstrate beyond material doubt

that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena

v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d

540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir.

1994).  The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  Id.

Plaintiff has sufficiently alleged that the Agency's search was not adequately calculated to recover all relevant documents.  Defendants, furthermore, acknowledge that they have not yet submitted the requisite affidavits necessary to carry their burden on the adequacy of their search. See Reply at 3 ("To the extent that Plaintiff is challenging the agency's withholding or search, the agency will file a Motion for Summary Judgment with supporting declaration that documents the processing of the Request.").   Plaintiff's FOIA claim, therefore, may proceed on this issue alone, but Defendants may file an appropriate motion for summary judgment with supporting affidavits that detail their search for responsive records.

The Court will thus grant in part and deny in part Defendants' Motion to Dismiss as to Count I.

B.  APA (Count II) & Mandamus (Count III)

Turning to the alternative causes of action, Defendants move to dismiss Plaintiff's APA claim (Count I) under Rule 12(b)(1) and its mandamus claim (Count II) under Rule 12(b)(6) because they duplicate the relief sought under FOIA.  Plaintiff admits that both claims are only "alternative ground[s] for relief" and itself supports proceeding forward on its FOIA claim alone. Opp. at 13.  This reasonable concession yields the proper result.

15

Defendants correctly state that the APA only affords judicial review of an agency action where "there is no other adequate remedy," and "this court has repeatedly held that FOIA is an alternative adequate remedy to the APA where an APA claim is premised on a violation of FOIA or seeks relief that can be obtained through FOIA." Mot. at 21-22 (collecting cases). Plaintiff concedes that it only asserted its APA claim in light of another District Court's ruling in Pohl v. EPA, No. 09-1480, 2010 WL 4388071, at *5 (W.D. Pa. Oct. 29, 2010) (holding that APA rather than FOIA controls courts' review of requests for grantee research data under Circular A-110). See Opp. at 13. The parties, however, agree that FOIA governs the instant dispute, and the Court concurs. See 45 C.F.R. § 74.36(d)(1) (requiring FOIA requests under Circular A-110 to be administered "through the procedures established under FOIA"); Pub. L. No. 105-277, 112 Stat. 2681-495 (same). Because FOIA provides an adequate alternative remedy and Plaintiff's APA claim is duplicative, the Court will dismiss Count II.

Likewise, Plaintiff only asserted its mandamus claim "in the event the Court concludes that neither the FOIA nor the APA provide relief." Opp. at 13. Mandamus "is a drastic [remedy], to be invoked only in extraordinary situations." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). It is only available if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting Power v. Barnhart, 292 F.3d. 781, 784 (D.C. Cir. 2002)). Because FOIA provides Plaintiff an adequate remedy, Count III does not, at a minimum, satisfy mandamus's third element. Plaintiff, moreover, does not object to proceeding solely on its FOIA claim. The Court, accordingly, will also dismiss Count III.

**IV.**     **Conclusion**

For the foregoing reasons, the Court will deny in part and grant in part Defendants'

Motion to Dismiss.  A separate Order consistent with this Opinion will be issued this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  February 13, 2013