# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC., | : |
| | : |
| Plaintiff, | : Civil Action No. 1:12-cv-01156-JEB |
| | : |
| v. | : |
| | : |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, NATIONAL INSTITUTES OF HEALTH, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES AND NATIONAL CANCER INSTITUTE, | : : : : : |
| | : |
| Defendants. | : |
| | : |

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Blake A. Biles
(D.C. Bar No. 441679)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
E-mail: blake.biles@aporter.com

Kent A. Yalowitz
*Pro hac vice*
ARNOLD & PORTER LLP
399 Park Avenue
New York, N.Y. 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
E-mail: kent.yalowitz@aporter.com

*Counsel for Plaintiff American Chemistry Council, Inc.*

Plaintiff American Chemistry Council, Inc. respectfully submits this Memorandum in Opposition to the Motion for Summary Judgment of Defendants United States Department of Health and Human Services ("HHS"), National Institutes of Health ("NIH"), National Institute of Environmental Health Sciences ("NIEHS") and National Cancer Institute ("NCI").

**PRELIMINARY STATEMENT**

Plaintiff commenced this action on July 12, 2012 to obtain records under the Freedom of Information Act ("FOIA") from Defendants pertaining to a federally-funded study—commonly referred to as the "Zhang Study"—which NIH cited as a basis for its inclusion of formaldehyde in the Twelfth Report on Carcinogens. Although Defendants have released some records in response to Plaintiff's request, other information remains to be released.

*First*, Defendants have searched only a "single electronic database" and one "support person's computer" for responsive electronic records. (Declaration of Alyssa Voss ¶ 10 (ECF Doc. No. 31-3) ("Voss Decl."); *see also* Mem. in Supp. of Defs.' Mot. for Summ. J. at 13 (ECF Doc. No. 31) ("Defs.' Mot.").) Eleven NCI scientists were co-authors of the Zhang Study, some with substantial roles in the study design and analysis. Those roles required the creation of documents that have not been provided.

*Second*, Defendants have withheld records identifying the factories at which Zhang Study subjects worked, claiming that this information is exempt from disclosure under FOIA Exemption 6 (on the theory that it might be "possible" for a member of the public to "link" that information with data previously produced by Defendants, and thereby identify individual subjects (*see id.* at 18)), and Exemption 4 (on the theory that the information regarding the factories is confidential commercial information (*see id.* at 21)). These arguments are

speculative, at best, and any confidentiality concern can be addressed by identifying the factories using anonymous identifiers such as "Factory A," "Factory B," etc.

## ARGUMENT

**I. DEFENDANTS' MOTION MUST BE DENIED BECAUSE THE RECORD LEAVES SUBSTANTIAL DOUBT AS TO THE ADEQUACY OF DEFENDANTS' SEARCH.**

To fulfill its obligation to conduct an adequate search under FOIA, an agency must demonstrate beyond substantial doubt that "its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).  To satisfy this burden, an agency may submit declarations that explain in reasonable detail the scope and method of its search.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 63 (D.D.C. 2002).  While a plaintiff may not overcome the presumption of good faith afforded to agency affidavits simply by speculating that other documents "must exist," *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 67 n.13 (D.C. Cir. 1990), if the record raises substantial doubt as to the sufficiency of the search, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment for the agency is improper, *Valencia-Lucena*, 180 F.3d at 326 (citations omitted).

**A. Defendants Overlooked Positive Indications Of Responsive Materials By Declining To Search The Individual Files Of The Zhang Study Co-Authors.**

Although 11 NCI employees served as co-authors of the Zhang Study (*see* Voss Decl. Ex. 3, at 80), Defendants initially confined their search to the files of NIEHS (*see* Defs.' Mot. at 6; Declaration of Carol Maloney ¶ 6 (ECF Doc. No. 31-2) ("Maloney Decl.")).  Later, after Plaintiff commenced this case, Defendants admitted that the NCI files should have been included within their search.  (*See* Defs.' Mot at 6; Maloney Decl. ¶ 11.)  Following this second search, Defendants have produced only two documents to Plaintiff, totaling 140 pages (108 of which are

- 3 -

the application for the grant to conduct the Study produced by NIEHS on December 1, 2011, and 32 of which comprise a single Chinese-language questionnaire administered to Zhang Study subjects which Defendants produced after commencement of this action).

Defendants attempt to explain the incongruity of their employees' involvement, on the one hand, with the paucity of records produced, on the other, in the Declaration of Alyssa Voss, FOIA Coordinator for NCI's Division of Cancer Epidemiology and Genetics.  The Voss Declaration describes the search for electronic "data and records" responsive to Plaintiff's FOIA request within a "*single* electronic database maintained by [a] support staff member" and within electronic folders "on the support staff person's computer."  (Voss Decl. ¶ 10 (emphasis added).) The Declaration is evasive with respect to the individual files of the 11 NCI co-authors.  It claims, without detail, that: (1) every one of the 11 co-authors "were knowledgeable of all data and records they had and where they were located"; (2) the co-authors were "consulted . . . to determine where to search for responsive records"; and (3) because "[a]ll responsive electronic and paper records related to the Zhang publication were centrally stored and maintained by one support staff member," "it was unnecessary to search the individual paper and electronic files of the [11] NCI co-authors for responsive records."  (*Id.*)  The Declaration makes the conclusory statement that a search of the co-authors' files would have been "duplicative."  It does not explain how the NCI FOIA personnel determined that copies of all of the NCI authors' data and records were maintained by a support staff person, or how it is that 11 scientists kept no records or data on a paper that they co-authored.

An agency may not limit its search to only one place if there are additional sources "that are likely to turn up the information requested," *Oglesby*, 920 F.2d at 68, yet this is exactly what Defendants have done in this case.  The record—including the lone record produced by NIEHS

in response to Plaintiff's request, *i.e.*, the grant application submitted by Dr. Zhang—is replete with indications that the NCI co-authors possess responsive information.  For example:

- The Institutional Review Board ("IRB") application, which is in NCI's files but has not been produced to Plaintiff, includes the full Zhang Study protocol, questionnaires and changes made to the protocol, and provides significantly more detail than the publication derived from the Study.  (*See* Declaration of Robinan Gentry ¶ 12a ("Gentry Decl.").)

- The grant application states that Dr. Blanche Alter of NCI "will consult with Drs. Zhang and Smith on all hematological aspects of the proposed studies."  No documents from Dr. Alter have been produced.  (*See id.* ¶ 12b.)

- Similarly, the publication derived from the Zhang Study indicates that certain routine clinical chemistry tests were conducted as part of the Study.  These results are not present either in the publication or in the materials provided in response to the Jain request.  (*See id.*)

- Drs. Rothman and Lan of NCI are noted in the grant application to have "designed and administered . . . a questionnaire to each study subject"; the application further states that these two scientists would play a significant role in entering Study data into a database and in analyzing those data.  No documents from Drs. Rothman or Lan have been produced.  (*See id.* ¶ 12c.)

- While NCI provided a Chinese-language questionnaire following its August 13, 2012 response to Plaintiff's appeal, NIH also would have required an English-language version for IRB approval of the Study protocol, which has not been produced to Plaintiff.  (*See id.*)

- The publication derived from the Zhang Study also indicates that: "[S]ubjects were administered questionnaire by trained interviewers requesting information on occupational history, environmental exposures, medical history and current medications, and past and current tobacco and alcohol use."  These records have not been produced to Plaintiff and were not provided in response to the Jain request.  (*See id.*)

- The grant application indicates that data from the "microscopic analysis" were to be sent to biostatisticians at NCI for further analysis.  This process should have generated laboratory analytical results from exposure monitoring and results from the FISH analysis for each subject.  While the publication provides the estimated median and 90th and 10th percentile formaldehyde air concentrations for control and exposed workers, the actual exposure data have not been provided, and would be necessary for the NCI investigators to perform the analyses described in the grant application.  (*See id.* ¶ 12d.)

Thus, the record indicates a substantial likelihood that the individual co-authors possess additional responsive records. Additionally, as set forth in the Gentry Declaration, an exposure study such as the Zhang Study typically "generates a wide array of other records which relate to the 13 subcategories identified by Plaintiff," which "frequently are *maintained exclusively by individual scientists and not in the NCI's central database or record system*." (*See id.* ¶ 15 (emphasis added).) Such records include, for example:

- Written communications among the 34 co-authors, including the 11 NCI scientists (*see id.* ¶ 13a);

- Drafts of the publication derived from the Study, including discussions of the Study's protocol, methodology, information, data, analyses, results, findings and conclusions (*see id.* ¶ 13b);

- Communications regarding revisions to the submission of the Study for publication, including those in response to reviewer comments (*see id.* ¶ 13c);

- Comments by publication reviewers (*see id.* ¶ 13d);

- Communications regarding HHS, NIH and/or NCI approvals for submitting the draft publication derived from the Zhang Study (*see id.* ¶ 13e); and/or

- Submissions to the IRB assigned to oversee the Zhang Study, including the protocol and English versions of the questionnaires administered to Study subjects (*see id.* ¶ 13f).

Defendants' bare assertions that the NCI co-authors were "consulted" and "knowledgeable" about their files is not adequate because it suggests that these co-authors performed no search at all. *See Defenders of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 55 (D.D.C. 2004) (finding agency's search inadequate where agency declaration "merely state[d] that the Deputy Under Secretary . . . was aware of the FOIA request" and stated that "he did not have any responsive documents").

### B.     Either Defendants Must Supplement Their Affidavits, Or The Court Should Allow For Discovery On This Issue.

Where the court determines the agency's affidavits to be deficient, it may allow for the parties to take discovery pursuant to Rule 56(d) or, more commonly, direct the agency to conduct further searches or to supplement its supporting declarations. *See, e.g.*, *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 184 (D.D.C. 2011; *Taylor v. Babbitt*, 673 F. Supp. 2d 20, 22-23 (D.D.C. 2009). In view of Defendants' insufficient efforts and supporting declarations, Plaintiff respectfully requests that the Court order Defendants to search the files of the 11 individual NCI scientists, and to supplement their declarations and response to Plaintiff's request, as appropriate, following those searches.

### II.    DEFENDANTS' INVOCATION OF FOIA EXEMPTIONS 4 AND 6 IS IMPROPER AND UNNECESSARY.

### A.     The Records Requested By Plaintiff In Item 2c Are Segregable.

Defendants claim that they identified as responsive to Item 2c, but properly withheld as exempt due to personal privacy concerns, "electronic data that are the names of the two factories where each study subject was employed." (Defs.' Mot. at 16.[1]) Any concerns regarding

---

[1] The nature of the Records withheld by Defendants with regard to Item 2c is confusing. The August 13, 2012 response to Plaintiff's appeal states:

> With regard to the data located in response to Item 2c, the search of NCI files produced *data that contains a code which identifies the specific factory where each study subject was employed*. Technically, this information is not within the scope of your request because the specific factory where each subject worked was not a variable analyzed for the publication. However, because the factories where the study was conducted were described in the publication, *a CD containing data that links each subject to his or her factory was located but must be denied pursuant to Exemption 6* (personal privacy).

(Gentry Decl. Ex. 5, at 3.) The Maloney and Voss Declarations, however, describe the withheld Records as "electronic data that are *the names of the two specific factories* where each study subject was employed." (Maloney Decl. ¶ 15; Voss Decl. ¶ 11.) Thus, Defendants either have withheld a "code" identifying the factories in question, a CD containing data that links study

Footnote continued on next page

- 7 -

personal privacy are easily addressed by redacting the names of the factories and replacing them with a generic identifier. As described in the Gentry Declaration, a common practice in exposure studies like the Zhang Study is to assign identifiers such as "Factory A" and "Factory B" to surveyed workplaces, and to assign subjects a number or other variable, and indicate their place of employment only by reference to the anonymous Factory identifier. (*See* Gentry Decl. ¶ 17.) In this manner, it is possible only to determine that, *e.g.*, Subject 1 worked at Factory A, but not the specific identity of Factory A or of Subject 1. (*See id.*)

Redactions are a common means by which agencies fulfill their duty under FOIA to segregate exempt portions of responsive records from non-exempt ones. *See, e.g.*, *Pub. Emps. for Envtl. Responsibility v. U.S. Envtl. Prot. Agency*, No. 12-748, 2013 WL 677672, at *10 (D.D.C. Feb. 26, 2013) (providing for redaction of names of individuals while disclosing methodology and other information in investigatory report). In this manner, "only that information which cannot be rendered sufficiently anonymous" is withheld. *Nat'l Cable Television Ass'n, Inc. v. Fed. Trade Comm'n*, 479 F.2d 183, 195 (D.C. Cir. 1973). Defendants have not asserted that segregation in this manner is not possible, and they bear the burden of doing so. *See, e.g.*, *Hooker v. U.S. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 62 (D.D.C. 2012) (citation omitted). To the contrary, Defendants' August 13, 2012 response to Plaintiff's appeal indicates that the factory information already exists in this form, noting that the NCI files included "data that contains a *code* which identifies the specific factory where each study subject was employed." (Gentry Decl. Ex. 5, at 3 (emphasis added).)

---

Footnote continued from previous page
participants to the factory (or the codes), or some other Record that includes the actual "names" of the factories—or up to all three of these items.

B.      **Defendants Have Failed To Meet The Requirements For Exemption 6.**

Exemption 6 does not apply because the information does not implicate a significant privacy interest, and because there is a substantial public interest in the release of the information.

1.      **The Identities Of the Factories Are Not Exempt Under Exemption 6.**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Defendants assert that the names of the factories in China from which Zhang Study subjects were drawn is "clearly the type of information" that falls under the "similar files" prong of Exemption 6.[2] (Defs.' Mot. at 17-18 n.4.) Defendants are wrong.

The term "similar files" "encompasses *detailed* Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post. Co.*, 456 U.S. 595, 602 (1982) (citation omitted). As this court recently held, although an individual's personal email address or phone number likely would qualify as "applying to that individual," "information about third parties [that] happens to have been found in responsive records and does not appear to contain personal or intimate information about these third parties" would not. *Friedman v. U.S. Secret Serv.*, No. 06-2125, 2013 WL 588228, at *19 (D.D.C. Feb. 14, 2013). In *Friedman*, the court noted that it is the nature of the information requested, and not the nature of the files that contain that information, that governs. *See id.* at *18 (citation omitted). The court found that, because the request was "designed primarily to obtain information about" radiation-emitting devices, and did not "seek information about a particular individual," and

---

[2] The publication derived from the Zhang Study indicates that there are five total factories or workplaces from which subjects were drawn: one that produced formaldehyde-melamine resins; one that used formaldehyde-melamine resins to manufacture plastic utensils; and three workplaces from which a control population was drawn. (*See* Gentry Decl. Ex. 1, at 81.)

- 9 -

because none of the responsive records were retrieved using the name of or any identifying information about a particular person, the Exemption did not apply, even though telephone numbers and names might have been found in the responsive files. *Id.* at 19. Such is the case here: Plaintiff seeks information about a scientific study of formaldehyde, not detailed personal information about the study's participants.

### 2. Defendants Have Failed To Demonstrate A Substantial Likelihood That Information About Individual Study Subjects Could Be Inferred.

Defendants further claim that NCI appropriately withheld the factory names because disclosure "would enable the requester, or others who gain access to the information, to identify study subjects," (Defs.' Mot. at 17-18), by "coupl[ing]" the factory names with "the detailed, de-identified data already released for the Jain request," (Maloney Decl. ¶ 15).

FOIA Exemption 6 encompasses information such as "place of birth, date of birth, employment history . . . and comparable data, if disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." *Ludlam v. U.S. Peace Corps*, No. 11-1570, 2013 WL 1289865, at *6 (D.D.C. Mar. 29, 2013) (quoting *Wash. Post Co.*, 456 U.S. at 600). However, Exemption 6 does not apply absent a "substantial likelihood that any concrete facts about a particular individual could be inferred as a result of the release of the withheld information." *Id.* (citation omitted). That is, the likelihood of identification of individuals must be "more palpable than a mere possibility," and "an increased likelihood of speculation as to the subject of the test is insufficient to invoke" Exemption 6. *Citizens for Envtl. Quality, Inc. v. U.S. Dep't of Agric.*, 602 F. Supp. 534, 538 (D.D.C. 1984) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 362 (1976)). Conclusory statements in a declaration as to the likelihood of identification are not sufficient. *See id.*

In this case, except for stating that it is "possible to link" the individualized information provided in response to the Jain request with the factory names in order to identify individual Zhang Study subjects (*see* Maloney Decl. ¶ 15), Defendants offer no insight or specificity as to how this might occur.  This Court has rejected such conclusory statements as insufficient to support the invocation of Exemption 6.  For example, in the recent *Ludlam* decision, Judge Sullivan found insufficient the agency declarant's "bare assertion" that the release of Peace Corps volunteer survey results could be linked with country information such that one "may easily identify" specific individuals.  2013 WL 1289865, at *7.  The court found that because the Peace Corps "provided no reasonable basis to determine that any particular individuals will be identified," the agency failed to meet its burden to demonstrate applicability of the exemption. *Id.; see also, e.g.*, *Citizens for Envtl. Quality*, 602 F. Supp. at 538-39 (finding insufficient agency affiant's "conclusory statements" that the identity of herbicide study subjects could be "readily deduced" by linking study results with "publicly known" circumstances of the study).  Where courts have found more than a "mere possibility" that the withheld documents could be linked with other information to create a privacy risk, the circumstances appear to be distinguishable from the facts of this case.  For example, in *Ludlam*, the court found that one category of survey responses was exempt from disclosure because those responses "rate[d] specific staff positions" which were "typically filled by one person or a few at most."  2013 WL 1289865, at *6.  The court found that, because the plaintiff had not provided any information to the contrary, there was "more than a 'mere possibility' that the [responses] could be linked to a particular individual if this information were released." *Id.*

In any case, the possibility of "linking" information in the manner alleged by Defendants is at best remote, because doing so would require some source for Zhang Study subject names

(which have not been requested), as well as some familiarity with the characteristics of the Study subjects in addition to the specific factory name beyond those characteristics provided in the Jain Materials.  (*See* Gentry Decl. ¶ 18.)

### 3. A Strong Public Interest Exists In The Release Of Records Identifying The Factories.

Even if Defendants could demonstrate that the names of the factories constitute "similar files," and that their disclosure would compromise a substantial privacy interest—and they do not—that interest is outweighed by the public's interest in the release of the information.  The Zhang Study purports to determine that exposure to formaldehyde, a nearly ubiquitous substance used to produce a vast array of products used by the public (*see* Compl. ¶ 9), "disrupts hematopoietic function and produces leukemia-related chromosome changes in exposed humans."  (Gentry Decl. Ex. 1, at 80.)  The Zhang Study identified two groups of workplaces: one consisting of two factories with formaldehyde exposures from the manufacture of two products; and one consisting of "three workplaces in the same geographic region as factories with formaldehyde exposure."  (*Id.* at 81.)  Therefore, the Study was designed to make comparisons between the groups of workers who are exposed in the two factories with formaldehyde exposure, and those workers considered to be unexposed in the "three workplaces," for differences in "hematopoietic function" that produce "leukemia-related chromosome changes," if any.  Information regarding which workers worked in which formaldehyde-exposed factory and which control subjects worked in which "control population" workplace is critical for meaningfully evaluating whether and to what extent these "leukemia-related chromosome changes" varied between the two exposed factory groups, as well as among the five groups of workers by some factor among the data collected, other than formaldehyde.  (*See id.* ¶ 19.)  Contrary to Defendant's cursory assertions (*see* Defs.' Mot at 19-20), this

- 12 -

correlation is not included in the publication derived from the Zhang Study, nor is it ascertainable from the materials produced in response to the Jain request.

### C. Defendants' Declarations Are Insufficient To Support The Application Of Exemption 4.

Finally, Defendants claim that withholding records identifying the factories was further justified under FOIA Exemption 4 (*see id.* at 21-24) which applies to "trade secrets and commercial or financial information obtained for a person and privileged or confidential," 5 U.S.C. § 552(b)(4). This claim fails because the requested information is neither commercial nor confidential within the meaning of Exemption 4.

#### 1. The Identity Of A Study Factory Is Not "Commercial" Information Subject To Exemption 4.

As the D.C. Circuit has noted, "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). Construing Exemption 4 to allow the government to withhold the name of a party simply because it is a "commercial" entity would mean that the government always could withhold the name of companies implicated by a FOIA request. Putting aside the absurd results to which this construction would lead, it is also wholly inconsistent with the presumption in favor of disclosure embodied by FOIA. *See, e.g.*, *Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, 842 F. Supp. 2d 65, 75 (D.D.C. 2012) ("Despite the availability of . . . exemptions, disclosure, not secrecy, is the dominant objective of [FOIA]. For this reason, the exemptions are explicitly made exclusive, and must be narrowly construed." (citations omitted)). The names of factories do not come within the scope of Exemption 4, which is

> intended . . . to extend privacy to a number of interests. . . . Specifically, Congress contemplated that business sales statistics, inventories, customer

> lists, scientific or manufacturing processes or developments, and negotiating positions, and like information that customarily would not be made public should not lose their character because the government required that information or otherwise obtained it.

*N.Y. Pub. Interest Research Grp. v. U.S. Envtl. Prot. Agency*, 249 F. Supp. 2d 327, 332 (S.D.N.Y. 2003).

The cases cited by Defendants do not support the premise that the mere identification of a business name satisfies the "commercial" threshold. In *Lepelletier v. Federal Deposit Insurance Corp.*, the court found the identity of business depositors to be "financial" (and not "commercial") within the meaning of Exemption 4 not as a general matter, but because plaintiff sought the list of banks in which individual depositors had a *financial* interest. *See* 977 F. Supp. 456, 459-60 (D.D.C. 1997). Similarly, *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 830 F.2d 278, 281 (D.C. Cir. 1987), and *Public Citizen Health Research Group*, 704 F.2d at 1286, do not stand for the proposition that simply because a company has a "commercial" interest in health and safety data, the company's identity itself is subject to Exemption 4. Rather, the courts in these cases found that the reports and data themselves were "commercial" information.

### 2. **Defendants' Have Not Satisfied The Confidentiality Prong Of Exemption 4.**

Defendants also have failed to prove that the information is "of a kind that would customarily not be released to the public" by the factories in question. As to the confidentiality prong, Defendants rely on: (1) the IRB prohibition of Zhang Study investigators "from doing anything that could result in the identification of study subjects or the study factories," (Maloney Decl. ¶ 16; Defs.' Mot. at 23); and (2) a 2012 memorandum from the IRB stating that "study investigators should not do anything that could potentially result in the identification of study

subjects or factories from the 2006 NCI-GDPCC collaborative formaldehyde biomarker study," which Defendants claim served to "memorialize promises of confidentiality to the factories and study participants," (Maloney Decl. Ex. 5; Defs.' Mot. at 19).  Neither of these items reaches the confidentiality threshold of Exemption 4.

Defendants assert that "the local Chinese IRB explicitly prohibited study investigators from doing anything that could potentially result in the disclosure of the factories' identities." (Defs.' Mot. at 23.)  However, the agency invoking Exemption 4 "bears the burden of proving the provider's custom."  *Soghoian v. Office of Mgmt. & Budget*, No. 11-2203, 2013 WL 1201488, at *4-5 (D.D.C. Mar. 26, 2013) (considering declaration of industry representatives in determining whether companies typically treated information as confidential) (citing *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 880 (D.C. Cir. 1992)); *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 18 (D.D.C. 2000) (declarations of automobile manufacturer employees).  Defendants have not demonstrated that it is the practice of the owners of the five Chinese workplaces to treat the information in this manner.

The 2012 IRB memorandum relied upon by Defendants is not sufficient to satisfy the confidentiality prong.  The cases relied upon by Defendants in support of this premise are distinguishable.  In *Parker v. Bureau of Land Management*, the court relied first upon the declarations of pipeline company executives that the withheld documents were "of a kind that they would not customarily disclose to the public because to do so would allow a competitor to gain knowledge of their business strategies and plans."  141 F. Supp. 2d 71, 79 (D.D.C. 2001).  The court noted that this evidence was "further supported by" the fact that certain of the *requested data* were subject to confidentiality agreements between the pipeline company and a

contractor. *Id.* And in *Judicial Watch, Inc. v. U.S. Department of Justice*, the agency's supporting declaration explicitly described the documents for which the company had an "expectation of privacy," and found that those "descriptions reveal[ed] that they contain material that would not ordinarily be divulged to the general public," including, *e.g.*, detailed financial information describing Enron's investment in certain Asian companies. 306 F. Supp. 2d 58, 68-69 (D.D.C. 2004). In this case, Plaintiff's request is devoid of such specificity and seeks only the identities of the factories.

### D.   ACC Has Not Waived Any Claim With Respect To Defendants' Invocation Of FOIA Exemptions 4 And 6.

Defendants also claim that Plaintiff has waived its right to challenge Defendants' invocation of Exemptions 4 and 6 with respect Item 2c of Plaintiff's request (*see* Defs.' Mot. at 16), which sought "Records identifying the specific factory at which each Study subject was employed," (*see* Gentry Decl. Ex. 2, at 2). Defendants argue that, because Plaintiff did not "mention . . . this withholding . . . at the status conference on February 27, 2013," Defendants are entitled to summary judgment on this issue. (*See* Defs.' Mot. at 16.)

This claim merits little attention from the Court. First, as Defendants readily acknowledge, they invoked Exemption 4 for the first time in the instant Motion, filed nearly two months after the status conference. (*See id.* at 21.) As a result, there was no basis for Plaintiff to know that Exemption 4 was even at issue prior to that time. Moreover, Defendants invoked Exemption 6 for the first time in NCI's response to Plaintiff's appeal, issued on August 13, 2012—well after Plaintiff commenced this action. Far from waiving the issue, Plaintiff expressly "reserve[d] its right to challenge this aspect of HHS' denial" at the earliest opportunity, when Plaintiff moved for summary judgment on November 8, 2012. (*See* Pl.'s Mem. in Supp. of

Mot. for Summ. J., at 8 n.5 (ECF Doc. No. 18).)  Thus, Plaintiff was not obligated to raise the issue anew either in Plaintiff's opposition or during the status conference.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion should be denied, and the Court should order Defendants to: (1) search the files of the individual NCI co-authors, and supplement their declarations and response to Plaintiff's request, as appropriate; and (2) provide the information responsive to Item 2c.

Dated: May 23, 2013                                         Respectfully submitted,

/s/ Blake A. Biles_____
Blake A. Biles
(D.C. Bar No. 441679)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
E-mail: blake.biles@aporter.com

Kent A. Yalowitz
*Pro hac vice*
ARNOLD & PORTER LLP
399 Park Avenue
New York, N.Y.  10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
E-mail: kent.yalowitz@aporter.com

*Counsel for Plaintiff American Chemistry Council, Inc*.