UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CHEMISTRY | ) | |
| COUNCIL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No.  1:12-cv-01156-JEB |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPLY IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

As shown in the motion for summary judgment (the "Motion"), the Court should rule in

Defendants' favor on the only remaining issue in this FOIA litigation, namely, the adequacy of

Defendants' search for responsive records.  Plaintiff's opposition provides no reason to conclude

otherwise, or to question the detailed declarations demonstrating the good faith search that the

Agency performed in this case.  Plaintiff's belated attempt to challenge the one instance in which

the Agency withheld responsive material is similarly meritless.  Plaintiff waived any such

challenge, and in any event, the withholding is amply supported by two independent exemptions

under FOIA.  Accordingly, the Court should grant Defendants' Motion.

**ARGUMENT**

**I.      DEFENDANT PERFORMED AN ADEQUATE SEARCH**

The Motion demonstrated the Agency's search for records was adequate as a matter of

law because it was reasonably calculated to produce responsive information.  As detailed at

length in the two supporting declarations, the Agency carefully searched the files that were likely to have responsive information related to the Zhang Publication, and produced nonexempt responsive information to the Plaintiff, to the extent such information had not already been disclosed in the publication itself or in response to the Jain Request.  Plaintiff does not dispute the adequacy of the Agency's search of NIEHS files, see Def. MSJ 13-14, nor does plaintiff deny that one of the two grants mentioned in the Request was unresponsive, see id. at 15-16.  Instead, plaintiff now asserts that the search of NCI was inadequate because the Agency limited its search to centrally maintained records related to the publication, rather than separately searching the files of individual NCI co-authors.   Plaintiff is wrong.

The declaration of Alyssa Voss explains at length how the responsive records pertaining to the Zhang Publication are centrally maintained within NCI, and describes in detail the Agency's search of the centrally maintained database, electronic files, and paper records.  Voss Decl. ¶¶ 9-10.   Moreover, as to the NCI co-authors, the declaration specifically explains:

> The NCI researchers who were co-authors of the Zhang publication were knowledgeable of all data and records they had and where they were located, and we consulted with them to determine where to search for responsive records.  We also consulted with them to determine whether responsive information had already been published in the Zhang publication or provided to the Jain request. All responsive electronic and paper records related to the Zhang publication were centrally stored and maintained by one support staff member. Therefore, it was unnecessary to search the individual paper and electronic files of the eleven NCI co-authors for responsive records, because such a search would have been duplicative of the centralized search that was performed and would have produced duplicative records.

Voss Decl. ¶ 10.  In other words, the Agency had no reason to separately search files of individual NCI co-authors because such a search would have produced duplicative records.  Def. MSJ 14.  Plaintiff does not support the assertion that this explanation is "conclusory."  Instead, Plaintiff finds the explanation inadequate because it "suggests that these co-authors performed no

2

search at all." Pl. Opp. 6.  This argument illogically assumes that an agency must search duplicative files in order to confirm that there is no need to search them.  Unsurprisingly, that is not the law.  See, e.g., Hall v. CIA, 881 F.Supp.2d 38 (D.D.C. 2012) (upholding agency's search of particular record systems where other systems would only contain "duplicate responsive records"); Blanton v. DOJ, 63 F. Supp. 2d 35, 41-42 (D.D.C. 1999) (agency not required to search a second set of records that would be duplicative of those already searched); Public Citizen, Inc. v. Department of Educ., 292 F. Supp. 2d 1, 8 (D.D.C. 2003) (same).

Similarly meritless is Plaintiff's contention – through its declarant, Dr. Robinan Genry – that individual co-author files would likely contain various additional responsive materials that are not maintained in the centralized records.  Pl. Opp. 4-6.  Plaintiff's declarant is not one of the 34 co-authors of Zhang Publication, and she does not claim to have had any involvement in that publication, or in the broader underlying exposure study from which it is derived.  Nor is there any basis to conclude that Plaintiff's declarant has any personal knowledge of NCI's record systems, or how NCI maintains records pertaining to scientific studies, publications or any other topic.  Thus, she is not competent to make statements about the likely existence of responsive records and/or their location in NCI record systems.[1]  See, e.g., Schoenman v. FBI, 2009 WL 763065 at *2 (D.D.C. 2009) (disregarding various statements by FOIA plaintiff in declaration because declaration failed to show basis for personal knowledge); Brophy v. Dep't of Defense, 2006 WL 571901 at *7 n. 4 (D.D.C. 2006) (finding FOIA plaintiff's declarant incompetent because he "has no personal knowledge regarding HRC's email systems or search capabilities").

---

[1] Nor does Plaintiff's declarant purport to be an expert under Fed.R.Evid. 702.  Indeed, the declaration does not even state that she has been involved in conducting scientific studies, or publishing peer-reviewed scientific research papers like the Zhang Publication.  Gentry Decl. ¶ 2 (stating that Dr. Gentry's duties "include the critical review and synthesis of scientific publications, as well as the study data underlying these publications") (emphasis added).

Moreover, in hypothesizing about the possible existence of various records, Dr. Gentry provides no basis to conclude that such records, assuming they exist, would even be responsive to Plaintiff's FOIA Request.   As the Agency has repeatedly explained, the Request sought records "related to the Zhang Publication," and that "were responsive to each sub-item of the Request, as set forth in the small-lettered sub-items 1(a) through 1(d), 2(a) through 2(g), and 3(a) through 3(b)."  Def. MSJ 13; see also id. at 6-7; Voss Decl. ¶¶ 5-7.   The declaration, however, largely ignores the limitations on the scope of the Request imposed by the various sub-items of the Request.[2]   For example, contrary to Dr. Gentry's suggestion, Gentry Decl. ¶ 13(a), none of the sub-items of the Request sought written communications among the 34 co-authors of the Zhang Publication.  Also contrary to the declaration, the sub-items did not seek the entire protocol for the broader study, id. ¶ 12(a), changes to the protocol, id., all hematological aspects of proposed studies, id. ¶ 12(b), data collected from the questionnaires for each Study subject , id. ¶ 12(c), microscopic analyses described in the grant application, id. ¶ 12(d), drafts of the Zhang publication, id. ¶ 13(b), communications regarding revisions to the Zhang publication,  id. ¶ 13(c), comments by publication reviewers, id. ¶ 13(a) & (d), or communications regarding agency approvals for submitting the draft Zhang publication, id. ¶ 13(e).

Equally problematic, the Gentry Declaration improperly conflates the broader underlying exposure study that is the subject of the grant application with the particular 2010 published article that is the subject of Plaintiff's FOIA request.  The broader underlying exposure study described in the grant application contemplates research activities that extend well beyond the analysis reflected in the Zhang Publication.  For instance, the grant application states that the

---

[2] As explained in Motion, Def. MSJ n. 2, and as made clear by this Court in American Chemistry Council, Inc. v. HHS, --- F.Supp.2d ----, 2013 WL 524447 (D.D.C. 2013), Plaintiff has forfeited any challenge to the Agency's sub-item by sub-item approach.   Plaintiff does not argue otherwise.

broader study was intended to test various working hypotheses in four "Specific Aims."  See, e.g., Gentry Decl. Ex. 3 at 73-80 (noting there were originally five aims, but the fifth aim was dropped, see id. at 79-80).  Only one of those aims (Aim 2, relating to myeloid progenitor cells and peripheral lymphocytes) was partially addressed in the Zhang Publication.  See Gentry Decl. Ex. 1 at 80-87 (focusing only on myeloid progenitor cells and not peripheral lymphocytes). Indeed, an entirely distinct publication derived from the underlying  study was just published in February 2013, relating to lymphocytes.  See Hosgood, H. D., et al. (2013), Occupational exposure to formaldehyde and alterations in lymphocyte subsets. Am. J. Ind. Med., 56: 252–257. (Abstract available at http://www.ncbi.nlm.nih.gov/pubmed/22767408 (last visited June 19, 2013).  The Request specifically sought records "related to" the 2010 Zhang Publication.  Voss Decl. Ex. 1 at 1 (seeking records "related to the publication 'Occupational Exposure to Formaldehyde, Hematotoxicity, and Leukemia-Specific Chromosome Changes in Cultured Myeloid Progenitor Cells' authored by Zhang et al. (2010) and published in the Journal of Cancer, Epidemiology, Biomarkers & Prevention.") (emphases added).  It did not seek records relating to the broader exposure study or records relating to other publications derived therefrom. Therefore, "NCI searched for records maintained or used for the research activities documented in th[e] [Zhang] publication,"[3] in accordance with plaintiff's Request.  Def. MSJ 6-7.  See also Voss Decl. ¶¶ 5, 7.

        Thus, while Dr. Gentry infers from various statements in the grant application that records were likely generated, she provides no basis to conclude that those records, assuming they exist, relate to the Zhang Publication, as opposed to the broader underlying exposure study or other publications derived from that study.  Moreover, Plaintiff does not challenge

_____

[3] Those research activities are further described in the Voss Declaration and the analysis in the publication itself.  Voss Decl. ¶¶ 5, 7 & Ex. 3.

Defendants' decision to "search[] for records maintained or used for the research activities documented in the Zhang Publication," Def. MSJ 6-7, much less argue that the decision reflects a misreading of the Request.[4]   Nor does plaintiff's opposition suggest any basis for a different reading of the Request.   See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").   In short, Dr. Gentry's declaration does not support an inference that additional responsive records were generated, much less that they could be found in NCI co-author files.

Finally, even if there were reason to conclude that some additional responsive record might exist, which there is not, that would not prove the Agency's search to be inadequate. "Whether or not the agency's search is reasonably calculated depends on the adequacy of the search, not on the results, and the adequacy of an agency's search is determined on a case-by-case basis, guided by a standard of reasonableness." Brannum v. Dominguez, 377 F. Supp. 2d 75, 79 (D.D.C. 2005).   Thus, "in assessing the reasonableness of a search, a court is not guided by whether the search actually uncovered every document" but by whether the Agency made "a good faith effort to conduct a search for the requested records, using methods reasonably

---

[4] Plaintiff is certainly aware that the Agency understood the Request to call for records relating to the publication, rather than the broader underlying exposure study.  Defendants' understanding, which is based on the plain language of the Request, was made clear throughout the Motion and supporting materials.  See, e.g., Def. MSJ 6-7; Voss Decl. ¶¶ 5, 7.  See also, e.g., id. ¶ 12 (stating that the Agency does not have responsive information to a particular sub-item "because information regarding specific medicines was not used in the Zhang publication, and as a result, would be unrelated to the Zhang publication"); id. (stating that "additional clinical chemistry data . . . would be unresponsive because they were not related to the Zhang publication"); id. ("The results reported in the Zhang publication did not involve the chromosome abnormalities of trisomy (three copies) of chromosome 7 and monosomy (one copy) of chromosome 8. Therefore, an analysis of trisomy of chromosome 8 is not related to the Zhang publication and is not responsive to plaintiff's request.").

expected to produce the information requested." Id. at 79-80 (internal quotation marks and

citation omitted).   See also, e.g., Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) ("Thus,

the issue [in assessing the search] is not whether there might be any further documents");

Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C.Cir.1986) (search is not presumed unreasonable

simply because it fails to produce all relevant material); Perry v. Block, 684 F.2d 121, 128

(D.C.Cir.1982) (agency need not demonstrate that all responsive documents were found and that

no other relevant documents could possibly exist).  As explained at length in the Motion and

supporting materials, the Agency has amply made this showing, and the Court should thus grant

summary judgment to Defendants on the adequacy of Defendants' search.

## II.   DEFENDANTS PROPERLY WITHHELD THE NAMES OF FACTORIES WHERE EACH STUDY SUBJECT WAS EMPLOYED

The Motion demonstrated that Defendants properly withheld the identity of factories

where each study subject was employed.[5]  As explained, Plaintiff waived any challenge to this

withholding, and in any event, the information was properly withheld under Exemptions 4 and 6.

---

[5] In addition to arguments addressed in the text, Plaintiff notes two perceived discrepancies pertaining to the factory names, but does not suggest that they bear on the merits of the dispute. First, Plaintiff states that there is some confusion about the nature of the withholding because the Agency's administrative appeal decision used the term "code" to describe the information.  Pl. Opp. 7-8 & n. 1.  The Agency's declarations clarify, however, that the Agency withheld electronic data, which are the actual factory names.  Maloney Decl. ¶ 15; Voss Decl. ¶ 11  Second, Plaintiff suggests that there were not just two relevant factories, but five, from which study subjects were drawn.  Pl. Opp. 9 n. 2, 12, 15.  However, the only workplaces identified as "factories" in the Zhang Publication were the two exposure factories, whereas the three additional control group workplaces are identified only as "workplaces."  Voss Decl. Ex. 3 at 81. Since the Request sought identities of the "specific factories" where each study subject was employed, the Agency reasonably understood it to request only the two specifically identified exposure group factories.  See, e.g., Wilson v. Dept. of Transp., 730 F.Supp.2d 140, 154-55 (D.D.C. 2010).  In any event, to the extent the control group workplaces included any factories, and those factories could be deemed responsive, they would be exempt from disclosure for the same reasons the exposure factories are exempt.  To the extent that the control group included workplaces other than factories, the workplaces would not be responsive to Plaintiff's request under sub-item 2(c) for "specific factories."

### A.  Plaintiff Has Waived Any Challenge To the Agency's Withholding

The Court has concluded – and all parties have agreed – that the only remaining issue in this case is the adequacy of the search, and thus Plaintiff's belated attempt to challenge the withholding of factory names is waived.  The Court's February 13, 2013 Opinion identified the adequacy of the search as the only remaining issue, and ruled that "Plaintiff's FOIA claim, therefore, may proceed on this issue alone."  American Chemistry Council, Inc. v. HHS, --- F.Supp.2d ----, 2013 WL 524447 at *9 (D.D.C. 2013).  Plaintiff never challenged this conclusion.  To the contrary, Plaintiff unequivocally agreed with it at the February 27 status conference.  As the Court explained, "the only thing that is left is a little piece [in Plaintiff's summary judgment motion] regarding the affidavit [supporting the adequacy of the search]," and "that's what I am going to require [Defendants] to file."  Def. MSJ Ex. A at 7-8.  Plaintiff's counsel responded:  "Right.  Agreed.  As a matter of substance, I think we're together."  Id. at 8. The Court and the parties then proceeded to set a briefing schedule based on the premise that the adequacy of the search was the single remaining issue.  See id.  See also Minute Order dated Feb. 27, 2013 ("Defendants shall file their Motion for Summary Judgment on the adequacy of the search on or before 4/09/2013.") (emphasis added).

Of course, given the important privacy and other interests involved, and the need to make absolutely sure that the factory names are not revealed, Defendants briefed the merits of the issue anyway, "in an abundance of caution."  Def. MSJ 16.  But Defendants should not be penalized for this precaution.  Plaintiff does not dispute Defendants' reading of this Court's Opinion, or the discussions at the subsequent status conference.  Instead, Plaintiff asserts that it "reserve[d] its right" to challenge the withholding in a November 8, 2012 summary judgment motion.  Pl. Opp. 16-17.  That assertion is irrelevant because, as explained above, Plaintiff subsequently

abandoned that challenge at the February 2013 status conference, when it agreed that the only

remaining issue was the adequacy of the search.  Indeed, the purported reservation in the brief

only serves to confirm that Plaintiff was fully cognizant of the withholding by the time of the

conference, and thus that Plaintiff consciously chose to abandon the issue.[6]

### B.  Plaintiff's Segregability Argument is Meritless

In any event, Plaintiff's challenges to the withholding of factory names are meritless.   As

an initial matter, Plaintiff argues that Defendants did not reasonably segregate non-exempt

information because the Agency could "redact" the factory names and create "generic

identifiers," such as "Factory A" and "Factory B," to replace them.  Pl. Opp. 8.  The argument

fails because FOIA does not require agencies to answer questions or create documents not

already in existence. See, e.g., Brown v. FBI, 675 F. Supp. 2d 122, 129-30 (D.D.C. 2009) (citing

cases); NLRB. v. Sears, Roebuck and Co., 421 U.S. 132, 162 (1975); Krohn v. DOJ, 628 F.2d

195, 197–98 (D.C.Cir.1980).  In any event, Plaintiff did not request "generic identifiers."

Plaintiff requested records "identifying the specific factory at which each Study subject was

employed."  Since the data withheld are the names themselves, Maloney Decl. ¶ 15; Voss Decl. ¶

11, the "redaction" of that information, or the use of "generic identifiers," would eliminate the

responsive information entirely.   It was simply not possible to segregate non-exempt

information from the names because the names themselves were exempt.  See Juarez v. DOJ,

518 F.3d 54, 61 (D.C.Cir.2008) (material may be withheld in its entirety under FOIA if there are

no non-exempt portions capable of being segregated).

---

[6] Because Plaintiff was aware of the withholding at the time of the conference, it is also irrelevant
that Defendants did not raise Exemption 4 as an independent, alternative ground for the
withholding at that time.  Indeed, even if Plaintiff's waiver applied only to the Exemption 6
claim, it would still justify summary judgment in Defendants' favor on this issue.

### A. The Factory Names Were Properly Withheld Under Exemption 6

As explained previously, the Agency properly withheld the names of participating factories under Exemption 6 because the names would enable interested parties to identify the study subjects, violating their personal privacy and revealing highly sensitive medical information about them, as well as violating specific disclosure restrictions imposed by an Institutional Review Board to protect the rights and welfare of human research subjects.  Def. MSJ 17-21; Maloney Decl.  ¶¶ 15-18.  Plaintiff makes a series of meritless arguments in response, none of which justifies disclosure of the factory names.

### 1.  *The Withheld Factory Names Meet the Threshold Requirement Under Exemption 6*

First, Plaintiff wrongly claims that this information does not meet the "similar files" threshold for consideration under Exemption 6.  Pl. Opp. 9-10.  But this threshold requirement is "minimal," and is not limited to "intimate" information.  <u>New York Times Co. v. NASA</u> 920 F.2d 1002, 1006 (D.C. Cir. 1990).   It covers all information that "merely 'applies to a particular individual.'"  <u>Id.</u>  That the information here meets this test is clear from the words of Plaintiff's own FOIA request, which seeks records "identifying the specific factory at which *each Study subject* was employed."  Voss Decl. Ex. 1 at 2 (emphasis added).  Thus, contrary to Plaintiff's suggestion, the Request seeks both employment-related and medical-related information applicable to "each" of the "particular individual[s]" who were the "Study subject[s]."  Courts have found this "minimal" threshold met even where the information was much more tangentially related to any particular individuals.  <u>See</u>, <u>e.g.</u>, <u>Forest Guardians v. FEMA</u>, 410 F.3d 1214, 1218 (10th Cir. 2005) (electronic Geographic Information System files containing

"specific geographic location" of structures are "similar files" because such information, coupled

with property records, could lead to the names and addresses of individual property owners).

### 2.  *The Names of Factories Where Study Subjects Worked Would Implicate a Substantial Privacy Interest*

Plaintiff does not dispute the magnitude of the privacy violation that would occur if the

study participants were identified, or the highly sensitive nature of the medical information that

could be revealed.   Instead, Plaintiff argues that the possibility of such identification is too

"speculative" to warrant protection.  Pl. Opp. 10-11.  Contrary to Plaintiff's assertions,

Defendants have not speculated that disclosure "might" enable the requester and other interested

parties to identify study subjects.  The evidence shows that disclosure "would," in fact, enable

interested parties to identify study subjects.   Maloney Decl. ¶ 15.  The factory names, after all,

identify the place of employment of the study subjects.  Appleton v. FDA, 451 F. Supp. 2d 129,

145 (D.D.C. 2006) (documents containing information relating to employment and medical

history, contain "the type of private information that is properly withheld under Exemption 6")

Department of State v. Washington Post Co., 456 U.S. 595, 600 (1982)  ( "information such  as .

. . employment history, and comparable data . . . would be exempt from any disclosure that

would constitute a clearly unwarranted invasion of personal privacy").  Much like an address,

such personal information allows interested parties to locate and  identify persons of interest,

even in the absence of names or other identifying information.   See, e.g., National Ass'n of

Retired Fed'l Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989) (finding that disclosure

of list of addresses, with names redacted, would implicate privacy concerns "substantially

identical" to those raised by a list that included both names and addresses); DOJ v. Reporters

Committee For Freedom of  the Press, 489 U.S. 749, 769 (1989)  (explaining that "even with

names redacted, subjects of such summaries can often be identified through other, disclosed

information," and approving deletion of "other identifying information" to safeguard privacy interest).  It is thus the sort of information that creates a palpable threat to privacy.  See Carter v. Department of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987).

Moreover, Defendants have shown that there is in fact additional identifying data available about the study subjects, which would serve to facilitate identification and lead to disclosure of highly sensitive medical information.  As explained:

> The previously provided dataset for the Jain request contained the age, gender, and exposure status of each study participant.  If the specific factories where each study participant worked were released, coupled with the detailed de-identified data already released for the Jain request, it would be possible to link each study participant with the specific factories and consequently identify them.

Maloney Decl. ¶ 15.  The declaration goes on to explain how such identification could reveal highly sensitive medical information, causing significant harm to the study participants.  The serious and non-speculative nature of the privacy interest at stake is further confirmed by the fact that disclosure of factory names would violate an explicit disclosure prohibition imposed by an IRB.  If the threat to privacy were not "real" but only "speculative," see Smith v. Department of Labor, 798 F. Supp. 2d 274, 284 (D.D.C. 2011) (citation omitted), there would be no need for the IRB to memorialize this prohibition on the disclosure of factory names.  The threat to privacy under Exemption 6 "need not be patent or obvious" to justify withholding.  Public Citizen Health Research Group v. DOL, 591 F.2d 808-809 (D.C. Cir. 1978).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C.Cir.2009) (internal quotations omitted).

Finally, Plaintiff offers no reason to doubt the very real privacy threat in this case.  Plaintiff's declarant devotes a total of two sentences to this issue, stating that it is "unlikely" that the Jain information could be linked with a "specific factory code" in a manner that would

identify study subjects.  Gentry Decl.  ¶ 18.   This opinion is irrelevant because it pertains to the

disclosure of "specific factory codes," rather than the factory names that are at issue here.  As

explained above, such codes and/or other "generic identifiers" would not be responsive, and

Defendants are not in any event required to create them under FOIA.  Moreover, the opinion is

vague and illogical in asserting that linking would also require a source for study participant

"names" and "familiarity with the characteristics of the study subjects."  Id.  If plaintiff had

access to participant "names," then it would presumably not need any additional information to

identify the participants.   And as already explained, the Jain information already reveals

"characteristics of the study subjects."  See, e.g., Maloney Decl. ¶ 15 (explaining that Jain

information provides age, gender and exposure status of study subjects).   The absence of

countervailing evidence from Plaintiff reinforces the conclusion that disclosure would create

substantial threat to privacy.  See Carter, 830 F.2d at 391-92 (absent conflicting evidence, court

gives "some credence to the agency's familiarity" with the matter and the risk of identification).

Accordingly, the Agency has amply demonstrated a substantial privacy interest.   Indeed,

the Agency believes that any further explanation on this point would risk compromising the very

privacy interest the Agency is trying to protect.  Thus, if the Court were to conclude,

notwithstanding the arguments herein, that additional information is required, Defendants are

prepared to file an in camera declaration to provide any further detail deemed necessary.  See

Edmonds v. FBI, 272 F. Supp. 2d 35, 46-47 (D.D.C. 2003) (approving use of an in camera

affidavit because "extensive public justification would threaten to reveal the very information for

which a FOIA exemption is claimed") (quoting Lykins v. U.S. Dep't of Justice, 725 F.2d 1455,

1463 (D.C. Cir. 1994)).

### 3.   *Disclosure would work a clearly unwarranted invasion of privacy*

As demonstrated in the Motion, disclosure would constitute a clearly unwarranted invasion of personal privacy because there is no viable public interest to balance against the individual privacy interests at stake, and because even if there were some marginal public interest, it would be clearly outweighed by the substantial privacy interest of the study subjects. Def. MSJ 19-21.  The burden of establishing such a public interest is on the plaintiff, Carter, 830 F.2d at 391 nn. 8 & 13; Prison Legal News v. Lappin, 436 F. Supp. 2d 17, 22 (D.D.C. 2006), and Plaintiff has failed to do so in this case.

Indeed, Plaintiff has not even come close.  Based on a single conclusory sentence in the Gentry declaration , Plaintiff asserts that information regarding which workers worked in which factories is "critical for meaningfully evaluating whether and to what extent the[] 'leukemia-related chromosome changes' varied between the two exposed factory groups, as well as among the five groups of workers by some factor among the data collected, other than formaldehyde." Pl. Opp. 12.  But even if this were true, it would not amount to a cognizable public interest in disclosure.  "The only relevant public interest in disclosure is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government."  Consumers' Checkbook Center for the Study of Services v. HHS, 554 F.3d 1046, 1051 (2009)  (citing cases) (internal formatting omitted).   However the factory names might bear on the conclusions in the Zhang Publication (if at all), those names shed no meaningful light on the Agency's own activities and/or operations.[7]  See id. at 1053 ("Even if the requested data could be used to measure the

---

[7] As already noted, Def. MSJ 19-20, disclosure of the factory names would not even shed meaningful light on the Zhang Publication, because all of the data used in the analysis set forth therein has already been released through the Zhang Publication itself, including descriptions of

quality of care provided by Medicare-enrolled physicians, it would not shed light on the 'agency's performance of its statutory duties.'").  Since plaintiff has not attempted to identify a cognizable public interest under FOIA , the Court "need not linger over the balance" with privacy interests because "something . . . outweighs nothing every time."  Nat'l Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989).  Even if there were some cognizable public interest in identifying the factories, it would not outweigh the very substantial interests of the study subjects in ensuring that their identities and medical information are not disclosed.  Def. MSJ 20-21 (citing cases).

**B.      The Factory Names Were Properly Withheld Under Exemption 4**

Defendants have also shown that this information was properly withheld under Exemption 4 because it is: (1) commercial; (2) obtained from a person; and (3) confidential. Def. MSJ 21-24.  Plaintiff does not deny that this information was submitted voluntarily and obtained "from a person."  Nor does Plaintiff deny that this information would meet even the more rigorous confidentiality standard applicable to information submitted under compulsion. Id. at 24.  Instead, Plaintiff makes two arguments, both of which are meritless.

*1.   The Withheld Information Is "Commercial"*

Plaintiff's argument that the information is not "commercial" fails for a number of reasons.  Plaintiff argues that the Court should not construe Exemption 4 "to allow the government to withhold the name of a party simply because it is a 'commercial' entity."  Pl. Opp. 13.  This argument rests on the false premise that disclosure would merely reveal factory

---

the exposure factories, and through the agency's response to the Jain request, which included the age, gender, and exposure status of each study participant.  Maloney Decl. ¶ 17.

names and nothing more. [8]  As Defendants have already explained, Def. MSJ 22, disclosure

would reveal not just the names themselves, but also the fact of these particular factories'

"participation in medical research bearing on the safety and health effects of a substance

(formaldehyde) used in their own manufacturing process."  See, e.g., Gilda Indus., Inc. v.

Customs & Border Prot. Bur., 457 F. Supp. 2d 6, 12 (D.D.C. 2006) (agency properly withheld

company names under Exemption 4 because requester sought more than "the bare disclosure of

the names of companies," it sought the disclosure of the names of companies who imported

goods during the fourth quarter of 2003 that were subject to the 100% duty imposed under a

tariff schedule).  Having failed to describe the information accurately – and offering no basis to

question Defendants' description above – Plaintiff's argument necessarily fails.

    Plaintiff's argument also ignores the broad definition of "commercial" information,

which includes any information in which the provider has a "commercial interest."  Def. MSJ  21

(citing authority).   Plaintiff's brief does not even mention the applicable standard (or any other

standard), let alone explain why the information here would not qualify.  Nor for that matter does

Plaintiff cite a single case to support its assertion that the information is not "commercial."  The

Motion demonstrates that the information is commercial because the factory owners have a

commercial interest in it.  Def. MSJ 21-22 (citing cases).   Plaintiff offers no response, except to

continue mischaracterizing the information as the "mere identification of a business name."  Pl.

Opp. 14.  In fact, Plaintiff concedes that "a company has a 'commercial' interest in health and

safety data."  Id.  Accordingly, the withheld information qualifies as "commercial" under

Exemption 4.

---

[8] Plaintiff's argument also rests on the false premise that finding information to be "commercial"
would – in and of itself – "allow the government to withhold" that information.  There are, of
course, other requirements under Exemption 4, including the requirement that the information be
"confidential" in nature, as plaintiff's own brief acknowledges.

## 2.   The Withheld Information Is "Confidential"

Plaintiff's argument that the information is not "confidential" is similarly meritless, as are Plaintiff's attempts to distinguish the applicable cases cited in the Motion.  Again, Plaintiff's argument rests on the false premise that the Request "seeks only the identities of the factories," Pl. Opp. 16, ignoring the fact that disclosure would also reveal the fact of the factories' participation in the medical research activities at issue, as well as detailed health and safety information pertaining to their employees and the products they manufacture.  See, e.g., Gilda Indus., Inc., 457 F. Supp. 2d at 12.  Plaintiff asserts that Defendants' evidence is insufficient to establish confidentiality, but plaintiff does not explain why the Agency's evidence should be deemed inadequate, and cites no authority to support such a conclusion.  Defendants' Motion and supporting materials explain at length the highly sensitive nature of the information.  Maloney Decl. ¶¶ 15-19.  They further explain that the information is subject to an explicit prohibition on disclosure by the IRB, and that this directive served in part to memorialize promises of confidentiality to the factories and the participants.  Id. ¶¶ 16, 19 & Ex. 5.  The existence of promises of confidentiality and an explicit disclosure prohibition pertaining to the very information in dispute plainly supports the proposition that the information is "of a kind" that is not customarily disclosed by the providers.  Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992).  See also Def. MSJ (citing cases).

Although Plaintiff does not say so explicitly, Plaintiff appears to believe that affidavits from the factories' owners or employees are required to establish custom.  See Pl. Opp. 15 (citing cases involving such third party declarations).   Such an evidentiary requirement, if it existed, would make it difficult if not impossible to avoid disclosing the very information determined to be exempt in this case, namely, the identities of the factories.   It would also lead

17

to absurd results, since it would mean that the information in this case meets the more rigorous

confidentiality standard applicable to information submitted under compulsion, but not the more

relaxed standard applicable to information submitted voluntarily.[9]  Def. MSJ 23-24.

Unsurprisingly, there is no such requirement.  "While affidavits from the information providers

themselves or evidence of confidentiality agreements would carry more weight on the custom

issue, . . . it is sufficient for an agency to proceed solely on its sworn affidavits."  Judicial Watch

v. Department of Commerce, 337 F. Supp. 2d 146, 171 (D.D.C. 2004) (citing, inter alia, Judicial

Watch v. DOJ, 306 F.Supp.2d 58, 68 (D.D.C.2004)).   Thus, while it would suffice for the

Agency to proceed "solely on its sworn affidavits," the Agency in this case has gone beyond this

requirement, submitting "evidence of confidentiality agreements" which carry even "more

weight" on the custom issue.  Judicial Watch v. Department of Commerce, 337 F. Supp. 2d at

171.   The Agency has amply demonstrated the requirements of Exemption 4, and the Court

should therefore grant summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in Defendants' favor.

---

[9] As noted, Plaintiff does not challenge Defendants' conclusion that the information would meet
the more rigorous standard because disclosure would impair the Government's ability to obtain
necessary information in the future.  Def. MSJ 24.

Dated:  June 20, 2013                         Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

RONALD C. MACHEN
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

 /s/ Peter M. Bryce
PETER M. BRYCE
(IL Bar No. 6244216)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Room 7138
Washington, D.C. 20530
Tel: (202) 616-8335
Fax: (202) 616-8470
E-mail: peter.bryce@usdoj.gov
Attorneys for Defendants