**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC., | |
| Plaintiff, | |
| v. | Civil Action No.  12-1156 (JEB) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | |
| Defendants. | |

<u>**MEMORANDUM OPINION**</u>

In November 2011, Plaintiff American Chemistry Council submitted a Freedom of

Information Act request to a division of the Department of Health and Human Services, seeking

records pertaining to a federally funded study about the potential health effects of exposure to

formaldehyde.  Dissatisfied with HHS's response to its request, Plaintiff then brought this suit,

which Defendants – HHS and three of its component agencies – subsequently moved to dismiss.

In February 2013, the Court granted that motion in part, but held that it was premature to rule on

the adequacy of Defendants' search before they had submitted supporting declarations detailing

their efforts.  Having now done so, Defendants move for summary judgment on this issue.

Because the Court finds Defendants' efforts adequate, it will grant the Motion and enter

judgment in their favor.

**I.        Background**

As the Court has previously set forth the facts of the underlying FOIA dispute in a prior

decision, <u>Am. Chemistry Council, Inc. v. United States Dep't of Health and Human Serv.</u>, No.

1

12-1156, 2013 WL 524447 (D.D.C. Feb. 13, 2013), it will limit its discussion of the facts here to

those that directly relate to this Motion.

      A.     <u>ACC's FOIA Request</u>

In its November 7, 2011, request, ACC sought the following documents related to a 2010

research paper in the <u>Journal of Cancer, Epidemiology, Biomarkers & Prevention</u>, primarily

authored by Luopoing Zhang:

1.     All Records related to the protocol and methodology for conducting the Study. These include all Records concerning:

     a.     Exclusion criteria for Study subjects.

     b.     The frequency-matching methodology that has been applied in the Study.

     c.     Statistical methods applied for evaluation of the data collected, to include assumptions related to the distribution of the aneuploid cells among individuals in the unexposed and exposed Study subjects (i.e., normal or clonal).

     d.     Methods used for conducting the Fluorescence *In situ* Hybridization (FISH) analysis, including the cutoff values for monosomy 7 and trisomy 8, and irrespective of whether or not intact metaphases were required for analysis.

2.     All Records related to the information and data obtained regarding the Study subjects.  These include all Records (whether in English or Chinese) concerning:

     a.     Original questionnaires administered to Study subjects by trained interviewers requesting such information as occupational history, environmental exposures, medical history and current medications, and past and current tobacco and alcohol use.

     b.     Spreadsheets or other Records that were developed in order to summarize and/or analyze the information collected as part of the questionnaires administered to each Study subject.

     c.     Records identifying the specific factory at which each Study subject was employed.

     d.     Records identifying the specific Chinese or Western medicines used by each Study subject.

    e.      Records containing the laboratory analytical results from the exposure monitoring conducted with UME diffusion samplers worn by each Study subject.

    f.      Data and methods used for estimating 8-hr time weighted average levels for control subjects and exposed subjects.

    g.      Records that provide the Study subjects' individual clinical chemistry results, to include laboratory standardization, laboratory reference values and interlaboratory comparison statistics.

3.    All Records related to any analyses, results (including but not limited to photomicrographs), findings and conclusions resulting from use of the protocol and methodology Records requested in (1) above, with respect to the information and data in the Records requested in (2) above, that have been conducted and that are not included in the published summary of the Study.  These include all Records concerning:

    a.      All FISH analyses of aneuploidy measured *in vitro* in progenitor cells of exposed and non-exposed workers, to include incidence of trisomy of chromosome 7 or monosomy of chromosome 8.

    b.      All FISH analyses of aneuploidy measured by formaldehyde *in vitro* in progenitor cells.

Mot., Declaration of Alyssa Voss, Exh. 1 (November 7, 2011, Request) at 2-3.  The request expressly excluded any records previously produced in response to a 2010 FOIA request.  See id.; see also Mot. to Dismiss, Exh. 4 (Komal K. Jain Request).

    B.    Defendants' Initial Response

Plaintiff's request was forwarded from the NIH FOIA Officer to the National Institute of Environmental Health Sciences (NIEHS), one of NIH's 27 Institutes and Centers, which had awarded the specific grants identified in Plaintiff's request.  See Mot., Declaration of Carol Maloney, ¶ 5.  This was done because "[e]ach IC maintains the grant records for the grants it awards.  Accordingly, NIEHS was the only IC in NIH that would maintain the grant files for the two referenced grants."  Id.  "The NIEHS FOIA Coordinator referred the request to the Division of Extramural Research and Training (DERT) within NIEHS, which maintained the grant files

for the two grants mentioned in the request, because Zhang is an extramural (outside) researcher who is not employed by NIH." Id., ¶ 7.

The Maloney Declaration further explains how the NIEHS grant files are maintained, who can access those files, and how they were searched in response to Plaintiff's request. See id. Additionally, it confirms that there "are no other files . . . which would contain data produced by a grant." Id. As a result of the search outlined in the Maloney Declaration, Defendant identified 108 pages of responsive records and provided them to Plaintiff. See id., ¶¶ 8-9. These documents were responsive to sub-items 1(a)-(d) and 3(a)-(b) of ACC's request; no records were found to be responsive to sub-items 2(a)-(g). See id., ¶ 8.

C.     Defendants' Supplemental Search

On January 4, 2012, Plaintiff filed an administrative appeal challenging the adequacy of this search on two grounds: (1) only NIEHS files had been searched, and (2) responsive records were identified only with respect to one of the two grant applications. See id., ¶ 10. Upon receiving the appeal, the NIH FOIA officer determined that the files of the National Cancer Institute should also have been searched and, accordingly, sent the request there to be processed. See id., ¶ 11. That search, described in the declaration of Alyssa Voss, NCI's FOIA Coordinator, produced an additional 32 pages, "consisting of the Chinese-language questionnaires that were administered to the study subjects," which are "responsive to sub-item 2(a) of the request." See Voss Decl., ¶ 11. The NCI search also located data that was "responsive to sub-item 2(c) of the request, which sought records identifying the specific factory at which each study subject was employed"; however, the agency withheld these records under Exemption 6 because they were "the names of the two specific factories where each study subject was employed." Id. Defendants also reviewed records related to the second grant application (P42ES004705) and

ultimately determined that documents related to this grant were not responsive because they pertained to benzene exposures, rather than the formaldehyde research that was the subject of the Zhang publication.  See id., ¶ 12.  Defendants' response to Plaintiff's appeal is set forth in their five-page August 13, 2012, Decision.  See Maloney Decl., Exh 4.

>D.     Defendants' Summary Judgment Motion

Approximately a month before Defendants issued their decision regarding ACC's appeal, Plaintiff filed this suit, asserting counts under FOIA and the Administrative Procedure Act, as well as seeking a writ of mandamus.  The Complaint alleged that Defendants' search of their records was inadequate and that they had improperly refused to request research data from the study's authors.  See Compl., ¶¶ 35-64.  Defendants moved to dismiss, and on February 13, 2013, this Court issued an Opinion dismissing all claims with respect to the request for research data, but permitting ACC to "proceed on [the adequacy of search issue] alone."  Am. Chemistry Council, Inc., 2013 WL 524447, at *9.

In a subsequent status conference, the parties agreed that the only outstanding issue was the adequacy of the search, and the Court set a briefing schedule on this one remaining issue, which was memorialized in a Minute Order following that conference.  See February 27, 2013, Minute Order ("Defendants shall file their Motion for Summary Judgment on the adequacy of the search on or before April 9, 2013.") (emphasis added).  Defendants then filed this Motion on April 25 (after being granted an extension), claiming that they had conducted a reasonable search in response to Plaintiff's request and had produced all responsive documents.  See Mot. at 11-16. ACC contests the Motion, arguing that Defendants failed to demonstrate that their search was adequate, and Plaintiff also separately challenges for the first time specific withholdings.  See Opp. at 7-17.  Yet ACC never previously objected to these withholdings and even agreed at the

status hearing that the sole remaining issue was the adequacy of the search.  See Mot., Exh. A

(Transcript of Feb. 27, 2013, Status Conference) at 3-8.  Any such objection is thus forfeited, and

the Court need not address it further.  The only issue to resolve, consequently, is the adequacy of

the search.[1]

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to

construe the conflicting evidence in the light most favorable to the non-moving party.  See

Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the

moving party's affidavits or declarations may be accepted as true unless the opposing party

submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly,

963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment.

Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S.

Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency bears

the ultimate burden of proof.  See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, n.3

---

[1] The day after this status hearing, Plaintiff submitted an additional FOIA request seeking the research data that the Court had previously held to be outside of the scope of its earlier request.  See Voss Decl., Exh. 2 (Feb. 28, 2013, FOIA Request).  Plaintiff later filed a separate FOIA suit before this Court challenging Defendants' response to that request.  See Am. Chemistry Council, Inc. v. United States Dep't of Health and Human Serv., No. 13-495, (Complaint filed April 11, 2013).  A separate briefing schedule governs these related proceedings.  See No. 13-495, July 5, 2013, Minute Order.

(1989).  The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . .  shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(3); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency

to sustain its action' and directs the district courts to 'determine the matter de novo.'" <u>Reporters</u>

<u>Comm.</u>, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times, courts must bear in

mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." <u>Nat'l Ass'n of</u>

<u>Home Builders v. Norton</u>, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting <u>Dep't of State v. Ray</u>, 502

U.S. 164, 173 (1991)).

As discussed above, the only issue before the Court is whether Defendants' search for

documents was reasonable and adequate.  "An agency fulfills its obligations under FOIA if it can

demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all

relevant documents.'" <u>Valencia-Lucena v. Coast Guard</u>, 180 F.3d 321, 325 (D.C. Cir. 1999)

(quoting <u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)); <u>see also</u> <u>Steinberg v.</u>

<u>Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is not whether

there might exist any other documents possibly responsive to the request, but rather whether the

<u>search</u> for those documents was <u>adequate</u>." <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476, 1485

(D.C. Cir. 1984) (emphasis in original).

The adequacy of an agency's search for documents requested under FOIA "is judged by a

standard of reasonableness and depends, not surprisingly, upon the facts of each case." <u>Id.</u>  To

meet its burden, the agency may submit affidavits or declarations that explain the scope and

method of its search "in reasonable detail." <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982)

(<em>per curiam</em>).  Absent contrary evidence, such affidavits or declarations are sufficient to show

that an agency complied with FOIA.  <u>See id.</u>  "If, however, the record leaves substantial doubt as

to the sufficiency of the search, summary judgment for the agency is not proper." <u>Truitt</u>, 897

F.2d at 542.

Attached to their Motion, Defendants have submitted the Declarations of Carol Maloney, FOIA Officer for the Public Health Service at HHS, and Alyssa Voss, the FOIA Coordinator in the Office of the Director in the Division of Cancer Epidemiology and Genetics, National Cancer Institute, National Institutes of Health at HHS, which, *inter alia*, explain in detail the steps that Defendants took to search for responsive records, including:

- Efforts undertaken to identify where relevant documents might be located, <u>see</u> Voss Decl., ¶¶ 9-12; Maloney Decl., ¶¶ 5-8;

- How records related to the specific grants referenced in the request were reviewed by NIEHS, <u>see</u> Maloney Decl., ¶ 7;

- The way in which the National Cancer Institute treated the request – sub-item by sub-item – for purposes of its search, <u>see</u> Voss Decl., ¶ 6;

- The objective of the Zhang study, as background for the type of records that it would produce, <u>see</u> <u>id.</u>, ¶ 7;

- A description of the office within HHS that contained all responsive records and how that office maintains data for epidemiological studies, <u>see</u> <u>id.</u>, ¶¶ 8-9;

- How the analyses and research activities for the Zhang publication were conducted, <u>see</u> <u>id.</u>, ¶¶ 9-10;

- The scope of the research activities and the Division's efforts to consult with the co-authors of the Zhang publication to determine where responsive documents were located, <u>see</u> <u>id.</u>, ¶ 10;

- How queries were run in electronic sources (as well as in paper records), <u>see</u> <u>id.;</u> and

- A discussion of the responsive documents that were located, as well as a discussion of sub-items that did not produce any responsive records and why such records may not have been located.

<u>See</u> <u>id.</u>, ¶¶ 11-12; <u>see also</u> Maloney Decl., ¶ 12.

ACC contends that the above-detailed search was inadequate for a single narrow reason: it failed to search the files of the study's co-authors, which would likely contain additional responsive records.  <u>See</u> Opp. at 6.  In support of this assertion, Plaintiff has submitted the

declaration of Robinan Gentry, a Ph.D in Toxicology whose work includes "the critical review and synthesis of scientific publications, as well as the study data underlying these publications," but who was not involved in the Zhang publication and has no personal knowledge of how Defendants maintain their records.  See Opp., Declaration of Robinan Gentry, ¶ 2.  The Gentry Declaration identifies a number of categories of responsive documents that she believes likely exist, but were not produced.  See id., ¶¶ 12-15.   These documents include, among other things:

- "Written communications (e.g., emails, facsimiles and letters) among the 34 co-authors, including the 11 NCI scientists, regarding the Study and its results," see id., ¶ 13(a);

- "Drafts of the Journal publication, including comments and discussions of the Study's protocol, methodology, information, data, analyses, results, findings and conclusions," see id., ¶ 13(b); and

- Comments by the publication reviewers.

See id., ¶ 13(d).  Such records, Gentry explains, "frequently are maintained exclusively by individual scientists, and not in the NCI's central database or record system.  Thus, a search of the individual co-authors' files would not necessarily have been 'duplicative' of the search of the central database."  See id., ¶ 15.  ACC thus maintains that additional responsive records would have been located if Defendants had searched the files of the 11 individual scientists, and not just the central records system.  See Opp. at 7.

While Gentry may have beliefs regarding how some documents are maintained at NCI, she has no basis to opine on the particulars of this case.  See Boyd v. Exec. Office for United States Attorneys, 741 F. Supp. 2d 150, 155 (D.D.C. 2010) (rejecting speculation as to adequacy of search where plaintiff's declarant had no personal knowledge of existence of responsive records or agency's methods of recordkeeping); Brophy v. United States Dep't of Defense, No. 05-360, 2006 WL 571901, at *7 n.4 (D.D.C. March 8, 2006) (rejecting plaintiff's "speculative

theories" that rest on declarant who has no personal knowledge regarding agency's maintenance of electronic files).

In any event, Defendants persuasively explain that "the Agency had no reason to separately search files of individual NCI co-authors because such a search would have produced duplicative records." Reply at 2. This is so, because

> [t]he NCI researchers who were co-authors of the Zhang publication were knowledgeable of all data and records they had and where they were located, and we consulted with them to determine where to search for responsive records. We also consulted with them to determine whether responsive information had already been published in the Zhang publication or provided to the Jain request. All responsive electronic and paper records related to the Zhang publication were centrally stored and maintained by one support staff member. Therefore, it was unnecessary to search the individual paper and electronic files of the eleven NCI co-authors for responsive records, because such a search would have been duplicative of the centralized search that was performed and would have produced duplicative records.

Voss Decl., ¶ 10.

This is thus not a case where the agency has failed to consider a particular source; instead, in her detailed, good-faith declaration, Voss addressed whether the co-authors would have responsive documents and determined that they did not. The Court will not second-guess these assurances. At bottom, where an agency has determined that a search of an alternate source would be duplicative of a search that has already been conducted, there is no genuine issue of fact as to the adequacy of the search. See Spannaus v. CIA, 841 F. Supp. 14, 18 (D.D.C. 1993).

The Court, therefore, finds summary judgment proper on the adequacy of the search.

**IV.     Conclusion**

For the foregoing reasons, the Court will issue a contemporaneous Order granting

Defendants' Motion.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 12, 2013